HERBERT B. CRANE, WILLIAM A. CRANE, STUART CRANE, CALEB CRANE, SALVATORE LAMURA, JOSEPH LAMURA AND JOHN W. DELVENTHAL, PLAINTIFFS-APPELLANTS AND CROSS-RESPONDENTS, v. BOROUGH OF ESSEX FELLS, A MUNICIPAL CORPORATION, DEFENDANT-RESPONDENT AND CROSS-APPELLANT, AND THE ESSEX COUNTY PARK COMMISSION, DEFENDANT.

Argued January 22 and 23, 1962—Decided February 19, 1962.

*Mr. Roger H. McGlynn* argued the cause for plaintiffs-appellants and cross-respondents (*Messrs. McGlynn, Stein & McGlynn,* attorneys).

*Mr. Ernest F. Keer, Jr.,* argued the cause for defendant-respondent and cross-appellant (*Messrs. Boyd, Dodd, Keer & Booth,* attorneys).

The opinion was delivered

PER CURIAM. The Chancery Division denied injunctive relief, conditionally, for reasons which were fully set forth by Judge Mintz in *Crane v. Borough of Essex Fells,* 67 *N. J. Super.* 83 (*Ch. Div.* 1961). The plaintiffs appealed from the refusal to grant their prayer for an injunction, the defendant Borough of Essex Fells cross-appealed from the imposition of the conditions, and while the appeal and cross-appeal were pending in the Appellate Division we certified them on our motion.

The borough operates a water supply system which supplies water in the borough and in the adjoining municipalities of Caldwell, North Caldwell, West Caldwell, Roseland and Verona. By 1954 it had become apparent that the borough would be obliged to seek additional sources of water outside the borough limits in order to keep up with the rapidly increasing demands on its water supply system. After three wells were located in Roseland and two test wells proved unproductive, the borough extended its search for additional water and obtained permission from the Essex County Park Commission to drill a test well on the Commission's land in West Caldwell. After receiving a permit from the Division of Water Policy and Supply (see *R. S.* 58:1–17; *R. S.* 58:6–1; *N. J. S. A.* 13:1A–9; *N. J. S. A.* 13:1B–50) the borough, on June 28, 1960, began drilling a test well and thereafter installed a pump. On July 21, 1960 it started the standard 72-hour test to determine the quantity of water which might reasonably be anticipated from the well. If the results of the test indicated that

operation of the well by the borough would be economically feasible, the borough planned to apply to the Division of Water Policy and Supply for diversion rights, submitting the results of the test along with data supporting the need for additional water. At oral argument it was acknowledged that if the plaintiffs desired to oppose such application for diversion rights they would have fair opportunity for hearing before the Division and for judicial review if they considered themselves legally aggrieved by any determination made or action taken.

Shortly after the borough began its activities it appeared that its test was interfering with the water supply from wells on nearby property. Thereupon the test was deferred by the borough while it sought to make arrangements with the property owners to whom it offered to furnish a suitable water supply during the test period. Some of the property owners accepted the borough's tender but the plaintiffs rejected it and filed a complaint in the Chancery Division seeking to prevent the borough from resuming its planned 72-hour test. The plaintiffs moved for a temporary restraining order, the borough moved to dismiss the complaint, affidavits were filed on behalf of the parties, and they agreed that the Chancery Division could enter final judgment "in the same way and manner as if the case had been tried on final hearing." The final judgment, as entered on April 21, 1961, determined that the borough could run its 72-hour test provided that it gave suitable notice to plaintiffs and the others in the area of its intention to run the test and its willingness to furnish to plaintiffs and the others, without charge, "adequate potable water from the public water supply to serve the normal needs of the respective property owners and occupants whose private water supply may be affected during such test."

It is clear to us that the borough is acting within its statutory powers in searching for additional sources of water supply outside the borough limits. See *R. S.* 40:62–49, 40:62–84, 40:62–89. Its proposed 72-hour test

on the Park Commission's land with the Commission's consent is in proper furtherance of its search. See *N. J. S. A.* 40:37-145. There has been no showing that the test itself threatens any irreparable injury to the plaintiffs and the Chancery Division acted sensibly and within its authority in refusing to prevent it. The condition which it imposed was fair and just insofar as all of the parties were concerned and it will amply protect the plaintiffs during the test period. When the test is completed the borough may decide that operation of the well would not be economically feasible and it may thereupon close the well and depart. On the other hand, it may decide that operation of the well would be economically feasible and then institute a proceeding before the Division of Water Policy and Supply in which the plaintiffs would have opportunity to participate. In no event will the denial of the restraint sought by the plaintiffs preclude them from asserting, in later proceedings, whatever claims they may have in view of the facts as they then appear. Under the circumstances the judgment of the Chancery Division must be viewed as justly serving vital public interests without any undue interference with the plaintiffs or their property rights and as coming within basic equitable principles which have long been applied in injunctive proceedings. See *Crane v. Borough of Essex Fells, supra,* 67 *N. J. Super.,* at *pp.* 90–94; *cf. Borough of Paramus v. Bergen County,* 25 *N. J.* 492, 497 (1958); *Rossi v. Sierchio,* 30 *N. J. Super.* 575, 581 (*App. Div.* 1954); *Devine v. Devine,* 20 *N. J. Super.* 522, 528 (*Ch. Div.* 1952).

Affirmed.

*For affirmance*—Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—6.

*For reversal*—None.