273 N.J. Super. 130 (1994)
641 A.2d 274
TRANS AMERICAN TRUCKING SERVICE, INC., AND TRANS AMERICAN TRUCK BROKERAGE, INC., NEW JERSEY CORPORATIONS, PLAINTIFFS-RESPONDENTS,
v.
KEVIN T. RUANE AND MCKENZIE ALL-COAST TRUCKING, INC., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 12, 1994.
Decided April 29, 1994.
*131 Before Judges MICHELS, KESTIN and WEFING.
Gary Potters argued the cause for appellants (Robinson, St. John & Wayne, attorneys; Joseph P. La Sala, Mr. Potters and Kathleen M. Barnett, on the brief).
Michael J. Canning argued the cause for respondents (Giordano, Halleran & Ciesla, attorneys; John F. Varley, III, on the brief).
WEFING, J.S.C. (temporarily assigned).
Defendants Kevin T. Ruane (Ruane) and McKenzie All-Coast Trucking Company, Inc. (McKenzie) appeal to this court from an order entered in the Chancery Division which enjoined them from soliciting or transacting business in any manner with National Starch and Chemical Company (National Starch) for a period of nineteen months.
The plaintiffs are Trans American Trucking Service, Inc. and Trans America Truck Brokerage, Inc., both of which are owned and controlled by Ronald McGraw. Trans American Truck Brokerage is the sales arm for Trans American Trucking; the trial court recognized the essential identity of these two entities and referred to them, as do we, simply as Trans American.
*132 Ruane began employment with Trans American in 1978 in a sales capacity. By 1981, he had become Vice President of Sales. Ruane's sales efforts led to the execution of a contract in 1982 between Trans American and National Starch. Trans American's earlier attempts to solicit National Starch's business, prior to Ruane's involvement in the matter, had been unsuccessful. After establishing its relationship with National Starch, Trans American opened facilities in other areas to support and service the National Starch account. It opened and staffed an office in Indianapolis, for instance, solely to serve National Starch.
After some period of time, Ruane became dissatisfied with his position at Trans American and began to explore other possibilities. Soon thereafter, McKenzie All-Coast Trucking was incorporated and it applied for and obtained permission from the Interstate Commerce Commission to commence operations. McKenzie is allegedly owned by Andrew Killelea, a relative of Ruane.
While still employed by Trans American, Ruane inquired of several employees of Trans American whether they would be interested in working for him if he established his own business. He also, while working for Trans American, discussed with representatives of National Starch his plans for starting up his own business and asked whether it could provide trucking services to National Starch. The answer was in the affirmative. When McGraw learned of Ruane's activities, he confronted him; the result of their meeting was that Ruane decided to leave Trans American. He took a position with McKenzie, which soon thereafter began to provide trucking services to National Starch. McKenzie hired employees of Trans American, including all those in the Indianapolis office. McGraw testified that Trans American's approximate average monthly revenues from National Starch were $170,000, although there was one month in 1992 in which the revenues from this account reached $229,000. Following Ruane's departure, the revenues fell to as low as $60,000 per month.
*133 Trans American brought this action seeking, in part, injunctive relief against Ruane and McKenzie.[1] Following an eight-day bench trial, the court entered the order in question. On this appeal, defendants do not challenge the conclusion by the trial court that defendant Ruane, by soliciting the business of National Starch for himself while still employed by Trans American, violated the duty of loyalty which he owed to his employer. Auxton Computer Enterprises, Inc. v. Parker, 174 N.J. Super. 418, 416 A.2d 952 (App.Div. 1980). Nor do they dispute that injunctive relief is appropriate in such a situation. Their only argument is directed to the length of the injunction imposed, which they contend is excessive and unsupported by the record.
Defendants rely upon the established principle that the aim of an injunction is to provide protection to the injured party, not to punish the offender. "The duration of an injunctive order should be no longer than is reasonably required to protect the interest of the injured party ... [for] [t]o continue the restraint at a time when plaintiff's pecuniary interest is no longer subject to being affected by defendants' activities would not be equitable; it would be purely punitive." Nat'l Inst. For Rehabilitation Eng'g v. Fenton, 146 N.J. Super. 434, 437, 370 A.2d 35 (App.Div. 1976). See also Wear-Ever Aluminum, Inc. v. Townecraft Indus., Inc., 75 N.J. Super. 135, 182 A.2d 387 (Ch.Div. 1962). Determining the scope of injunctive relief "necessarily require(s) an individualized balancing of rights." Horizon Health Center v. Felicissimo, 135 N.J. 126, 148, 638 A.2d 1260 (1994). It involves a process which requires a sensitive evaluation of the entire situation and sound judgment in assessing its component elements. The injunctive remedy should be no broader than is necessary to provide relief to the injured party. McLendon v. Continental Can Co., 908 F.2d 1171 (3d Cir.1990).
Determining an appropriate period for the running of an injunction is a matter which, in particular, calls for sound judgment *134 and discretion. There is no yardstick by which the length of an injunction may be mechanically determined. The trial court here evidently selected nineteen months based on its apparent calculation that Ruane remained with Trans American for that period of time after his initial wrongful solicitation of National Starch. Although we question whether, by itself, that is an appropriate determining factor to employ in deciding the proper length of time for an injunction to run, we cannot ignore the fact that here, the actions of defendants resulted in the loss of significant business for Trans American, as well as the loss of employees who joined defendants, including all those at the Indianapolis facility. Any business entity would require some period of time to recover from the effects of defendants' wrongful acts.
Thus, we are unable to conclude that the trial judge was so far off the mark that we should substitute our judgment for his. United Board & Carton Corp. v. Britting, 63 N.J. Super. 517, 164 A.2d 824 (Ch.Div. 1959), aff'd, 61 N.J. Super. 340, 160 A.2d 660 (App.Div.), certif. denied, 33 N.J. 326, 164 A.2d 379 (1960); Smith v. Smith 17 N.J. Super. 128, 132-33, 85 A.2d 523 (App.Div. 1951), certif. denied, 9 N.J. 178, 87 A.2d 387 (1952) ("[T]o warrant an appellate court ... nullifying a ruling of the trial court made in the exercise of a conceded discretion ... the judicial action must have been clearly unreasonable in the light of the accompanying and surrounding circumstances...."). See also Sheppard v. Township of Frankford, 261 N.J. Super. 5, 617 A.2d 666 (App.Div. 1992).
Affirmed.
NOTES
[1] By the time of trial, plaintiffs had dropped their claims for damages and sought only injunctive relief.