687 A.2d 330

ANGELO PATERNOSTER, PLAINTIFF–RESPONDENT,
v. KAREN SHUSTER, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 10, 1996—Decided January 23, 1997.

548

Before Judges MICHELS, KLEINER and COBURN.

*Anat Gordon* argued the cause for appellant.

*Steven K. Parness* argued the cause for respondent (*Riker, Danzig, Scherer, Hyland & Perretti*, attorneys; *James S. Rothschild, Jr.*, of counsel; *Mr. Parness*, on the brief).

The opinion of the court was delivered by

KLEINER, J.A.D.

Plaintiff Angelo Paternoster, a school principal, filed a verified complaint and an order to show cause on November 16, 1994, for temporary restraints to enjoin defendant Karen Shuster from harassing him, his family, his counsel, and his co-employees. Shuster had been formerly employed as the school nurse in an Elizabeth public school where plaintiff was the principal. Although plaintiff's complaint sought damages attributable to defendant's negligent or willful interference with plaintiff's business relationships, his request for a temporary injunction specifically related to an act of harassment and a battery on November 15, 1994.

To fully explain the events that gave rise to this litigation, we must briefly review the relationship between the litigants. That relationship may be divided into three phases: pre–1991; 1993 to November 10, 1994; and November 15, 1994, to present.

A.

Prior to 1991, plaintiff, Angelo Paternoster, was employed as a school principal by the Elizabeth Board of Education. Defendant, Karen Shuster, was employed as a school nurse and was assigned to plaintiff's school. From the pleadings, it would appear that defendant has long held the belief that plaintiff was enamored with her. Defendant's perception is that various acts allegedly performed by plaintiff were demonstrative of his flirtatious intentions. Defendant, for her part, was apparently interested in

pursuing a romantic relationship with plaintiff. Plaintiff alleges that when defendant's intentions became clear, he made a serious effort to convince her that he, in fact, had no interest in her other than the professional relationship of principal and school nurse. Despite plaintiff's explanations to defendant, plaintiff alleges that defendant persisted in her pursuit and began to telephone him at his home. According to plaintiff, defendant started to leave messages with plaintiff's wife, his mother, and with school employees requesting that plaintiff return her calls.

On or about February 14, 1991, defendant received an anonymous Valentine's Day card. Defendant was positive that the card had been sent by plaintiff. When she confronted plaintiff with her belief, he denied having sent the card. Defendant then submitted the card along with samples of plaintiff's writing to a handwriting expert, who concluded that the card and the samples had been penned by the same hand.

In March 1991, plaintiff contends that he was contacted by defendant's therapist and warned that defendant was obsessed with him and that defendant might be dangerous. Plaintiff reported this telephone call to the director of personnel of the Elizabeth Board of Education. Soon thereafter, the acting superintendent demanded that defendant submit to a psychiatric evaluation. Defendant was also suspended from her duties, with pay, pending receipt of a psychiatric evaluation. Defendant resigned, effective May 15, 1991, after refusing to submit to the requested evaluation.

Notwithstanding her resignation, defendant began sending intimate letters and cards to plaintiff. For instance, in June 1991, defendant sent a card to plaintiff that read, in part, "I love you very much.... I miss you so much. I am miserable without you in my life." In May and June 1991, defendant sent cards with messages such as, "[t]here is no enemy except the conflict within my own mind," and "[w]e need to trust love not fear it." In November 1991, defendant sent several communications to plaintiff expressing her intimate feelings. Defendant also sent photo-

graphs of herself. Plaintiff certifies that, during this time, defendant frequently called his home and office.

Plaintiff became so distressed by defendant's acts that he reported her activities to the local police department on November 19, 1991. Although plaintiff was not interested in pursuing legal action against defendant, he felt that reporting defendant's activities to the police as a matter of record would document his concern for his own safety and the safety of his family. When defendant's acts continued, plaintiff filed a second report with the Elizabeth police on December 7, 1992, but elected not to take further legal action.

The record does not indicate whether defendant continued her activities over the next twelve months. At some point, however, defendant reviewed the police reports and concluded that plaintiff had defamed her. Defendant then filed a complaint, on November 19, 1993, alleging libel, slander, interference with advantageous business relationship, and harassment. Plaintiff filed an answer.

Despite the fact that defendant was represented by counsel, she began to contact plaintiff's counsel directly to discuss her claims and to promote the relationship that she still hoped to have with plaintiff. Because defendant's contacts with plaintiff and his counsel were extremely irritating and disruptive, plaintiff sought a temporary restraint to prevent defendant from contacting him, his family, his counsel, and his co-workers. A temporary restraining order was issued on October 21, 1994. In anticipation of a future plenary hearing, a case management conference was scheduled for November 10, 1994. Shortly before that conference, defendant voluntarily dismissed her complaint and plaintiff withdrew his request for a permanent injunction. Ostensibly, the litigation was at an end.

### B.

On February 14, 1994, defendant alleges that she received another anonymous Valentine's Day card. She concluded that

plaintiff had mailed the card to her. Again, defendant's handwriting expert concurred with her suspicions.

On November 15, 1994, defendant, who lived near plaintiff, encountered him in a neighborhood supermarket. Plaintiff contends that defendant attempted to strike up a conversation. He ignored her and walked away. Approximately twenty minutes later, defendant confronted plaintiff in the supermarket parking lot and demanded that he speak with her. After the confrontation, plaintiff filed a verified complaint, seeking a temporary restraint. The certification filed at that time asserted the following:

11. I repeated that I had nothing to say to her and asked her to leave me alone. She refused and physically prevented me from putting away my groceries or getting into my car. She then proceeded to roughly grab my coat by the arm and by the collar.

12. At this point I told her that if she didn't allow me to leave I would return to the store to call the police. [Defendant] repeated her demands that I provide her with answers and continued to grab onto by [sic] coat and arm in [an] effort to keep me from leaving.

13. Finally, I managed to break her hold on me and returned to the store in an effort to get away from her.

14. [Defendant] followed me into the A & P but quickly left when I approached the manager's desk.

Based on plaintiff's certification, a judge issued an order to show cause, returnable on November 17, 1994. At this initial hearing, defendant appeared without counsel. She advised the court that she did not intend to hire counsel. She requested an opportunity to explain the events of November 15, 1994. The judge placed defendant under oath. In her explanation, defendant stated:

I tried to hold his hand and I tried to approach it in a very calm manner, I wanted him to, to just give me some reassurance of how all this had gone so, had escalated to the point that it was now. And he just was very resistant, he wouldn't talk to me and I tried to hold his hand, I tried to hold his jacket, he didn't try to move away that much but he would not give me answers.

Based upon plaintiff's certification and defendant's uncounseled testimony, the judge issued a temporary restraint and scheduled a

plenary hearing on plaintiff's request that a permanent restraint issue. The judge reasoned:

> I am not making any final determinations today. The only determination I am making is that [plaintiff] is entitled for the immediate future to be free of interference.... I am not satisfied either from what happened two nights ago or from what I've heard in Court today that [defendant's] interest in not having an order is as great as or greater than [plaintiff's] interest in having an order that says that [defendant] may not have any contact with him, none whatsoever.

The initial order scheduled a plenary hearing for December 1, 1994, to determine if the preliminary injunction should become permanent. That hearing was postponed, the temporary restraints were continued, and a new plenary hearing date was scheduled for January 25, 1995. In the interim, defendant retained counsel and filed and served her answer on January 22, 1995. Defendant also sought to reinstate her previously filed complaint. Although defendant's motion was denied, the court granted a postponement of the plenary hearing and gave defendant the right to file an amended answer and counterclaim, provided those pleadings were filed by February 14, 1995. Defendant complied with that directive. In her answer, filed on February 14, 1995, defendant contended, *inter alia,* that on that same date, she received yet another anonymous Valentine's Day card.[1] She again accused plaintiff of sending her the card. Defendant again submitted the card to her handwriting expert, who again concluded that the writing was done by plaintiff.

On March 6, 1995, plaintiff, without having filed an answer to defendant's counterclaim, filed a motion, returnable April 13, 1995, requesting: (1) dismissal of defendant's counterclaim for failure to state a cause of action; (2) dismissal of plaintiff's request for relief

---

[1] Although defendant's amended answer and counterclaim bear a typed date of February 13, 1995, the counterclaim specifically refers to the receipt of another Valentine's Day card on February 14, 1995. The record on appeal does not explain this discrepancy. We will presume the typed date was a typographical error.

as to damages;[2] and (3) summary judgment granting a permanent restraining order. In response, defendant sought a permanent restraint against plaintiff.[3]

On March 2, 1995, defendant attempted to file a third-party complaint against the Elizabeth Board of Education, the individual members of the board of education, and the superintendent of the school board. The third-party complaint designates defendant as a taxpayer of the City of Elizabeth. The proposed third-party complaint contends that defendant was forced to resign on May 15, 1991, in violation of the New Jersey Law Against Discrimination. Plaintiff's third-party complaint also made the following allegations: (1) public funds were expended to finance private litigation, which did not concern the board of education, because the current suit was authorized by a resolution of the board of education passed on November 16, 1994; and (2) that on two occasions, the superintendent, the board, and its individual members had maliciously and recklessly released documents from defendant's prior personnel file. Defendant contended that the release of documents, presumably to plaintiff, violated the Law Against Discrimination and had caused defendant to suffer humiliation and emotional and mental anguish. Defendant sought job reinstatement, compensatory and punitive damages, attorney's fees, and costs.

On March 3, 1995, defendant attempted to file a second amended answer and counterclaim. On March 29, 1995, defendant attempted to file an amended third-party complaint.

Plaintiff's motion was ultimately heard May 1, 1995. Based solely upon the pleadings and counsel's oral argument, but without testimony of either plaintiff or defendant, the motion judge permitted plaintiff to dismiss his damage claim and granted plaintiff's

---

[2] Defendant would not voluntarily agree to allow plaintiff to dismiss a claim against her.

[3] As noted, defendant's counterclaim also sought a permanent restraint against plaintiff.

request for a permanent injunction. The judge concluded that defendant's third-party complaint and amended third-party complaint as well as defendant's amended answer and counterclaim were untimely filed. The judge denied defendant's cross-motion for a permanent restraint against plaintiff. The judge also dismissed defendant's counterclaim for failure to state a cause of action. The judge concluded that the counterclaim based upon defamation was barred by the statute of limitations and that defendant's claim for damages based on receiving anonymous Valentine's Day cards was not cognizable under the doctrine of *de minimis non curat lex* (the law does not care about trifles).

Defendant appeals, challenging each of the court's rulings. We conclude that the motion judge improvidently granted plaintiff a permanent injunction. Although plaintiff may ultimately be entitled to a permanent injunction, granting that relief summarily was error. We also conclude that the motion judge erred: in dismissing defendant's counterclaim; in denying defendant's cross-motion for injunctive relief without first conducting a plenary hearing; and in denying defendant the opportunity to file a third-party complaint. We therefore reverse each ruling.

I

As noted, a temporary restraint was issued. The standards for issuing a preliminary injunction were clearly established by the Supreme Court in *Crowe v. De Gioia,* 90 *N.J.* 126, 447 *A.*2d 173 (1982). First, "a preliminary injunction should not issue except when necessary to prevent irreparable harm." *Id.* at 132, 447 *A.*2d 173. The Court noted, "[i]n certain circumstances, severe personal inconvenience can constitute irreparable injury justifying issuance of injunctive relief." *Id.* at 133, 447 *A.*2d 173. Second, "temporary relief should be withheld when the legal right underlying plaintiff's claim is unsettled." *Ibid.* Third, "a preliminary injunction should not issue where all material facts are controverted." *Ibid.* "[T]o prevail on an application for temporary relief, a plaintiff must make a preliminary showing of a reasonable

probability of ultimate success on the merits." *Ibid.* "[T]he point of temporary relief is to maintain the parties in substantially the same condition 'when the final decree is entered as they were when the litigation began.'" *Id.* at 134, 447 *A.*2d 173 (quoting *Peters v. Public Service Corp.*, 132 *N.J. Eq.* 500, 29 *A.*2d 189 (Ch.1942), *aff'd. o.b.*, 133 *N.J. Eq.* 283, 31 *A.*2d 809 (E. & A. 1943)).

When we review an order granting permanent injunctive relief, however, we are guided by the precepts discussed in *Sheppard v. Township of Frankford*, 261 *N.J.Super.* 5, 10, 617 *A.*2d 666 (App.Div.1992), in which we adopted the guidelines for permanent injunctive relief, as set forth in the *Restatement (Second) of Torts* § 936 (1977). *Sheppard*, 261 *N.J.Super.* at 10, 617 *A.*2d 666. This nonexclusive list of factors includes:

(1) the character of the interest to be protected; (2) the relative adequacy of the injunction to the plaintiff as compared with other remedies; (3) the unreasonable delay in bringing suit; (4) any related misconduct by plaintiff; (5) the comparison of hardship to plaintiff if relief is denied, and hardship to defendant if relief is granted; (6) the interests of others, including the public; and (7) the practicality of framing the order or judgment.

[*Ibid.* (citing *Restatement (Second) of Torts* § 936).]

*Sheppard* mandates that a trial judge must balance these factors in a qualitative manner. *Ibid.* (citing *Crane v. Borough of Essex Fells*, 67 *N.J.Super.* 83, 91, 169 *A.*2d 845 (Ch.Div.1961), *aff'd*, 36 *N.J.* 544, 178 *A.*2d 196 (1962)). Such an inquiry "necessarily require[s] an individualized balancing of rights." *Horizon Health Center v. Felicissimo*, 135 *N.J.* 126, 148, 638 *A.*2d 1260 (1994), *certif. denied*, 142 *N.J.* 574, 667 *A.*2d 191 (1995), and "a sensitive evaluation of the entire situation." *Trans American Trucking Service, Inc. v. Ruane*, 273 *N.J.Super.* 130, 133, 641 *A.*2d 274 (App.Div.1994).

In this particular case, the motion judge relied solely upon plaintiff's certification and defendant's explanation of the events of November 15, 1994, which defendant had expressed as a pro-se litigant on the return day of the order to show cause. The motion judge specifically concluded that she was not ruling that defendant's acts as described in plaintiff's verified complaint constituted

harassment but did conclude that defendant's testimony, by way of her explanation given on November 17, 1994, constituted an admission to the commission of a battery. The motion judge, however, failed to make a qualitative analysis of the factors adopted from the *Restatement.*

Moreover, the failure to make specific findings of fact was in direct violation of *Rule* 4:52–4:

> Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained.

*[Ibid.]*

Additionally, in *Lopez v. New Jersey Bell Telephone Co.*, 54 *N.J.* 129, 131, 253 *A.*2d 802 (1969), the Supreme Court specifically concluded that affidavits are insufficient to support a judgment for a permanent restraining order, even though they were used properly on an application for temporary injunctive relief. The Court specifically noted that since the affiants were available to testify, they should have been permitted to do so at a final hearing. *Id.* at 131–32, 253 *A.*2d 802. The Supreme Court accordingly remanded the matter to permit the Chancery Division to take oral testimony. *Id.* at 132, 253 *A.*2d 802.

Here, contrary to *Lopez,* the motion judge relied solely on plaintiff's certification and defendant's prior testimony. Defendant's counsel was not permitted an opportunity to cross-examine plaintiff, as his testimony was not presented. Additionally, defendant's counsel was foreclosed from presenting defendant's testimony, which might have been offered to supplement her prior uncounseled statements, albeit statements made under oath.

## II

As noted, the motion judge dismissed defendant's counterclaim. As a result, defendant's cross-motion for a permanent injunction against plaintiff was denied, as the counterclaim also

sought permanent injunctive relief. We conclude that the judge's ruling was error in the absence of an evidentiary hearing.

Defendant's counterclaim consisted of two primary allegations: (1) that plaintiff had filed false police reports on November 19, 1991, and December 7, 1992, which defamed defendant's character and fitness for trade and profession; and (2) that plaintiff had mailed three anonymous cards to defendant, which constituted harassment and caused plaintiff to suffer mental pain and anguish and required defendant to seek the advice and counsel of a therapist. The *ad damnum* clause sought compensatory and punitive damages, a permanent injunction enjoining plaintiff from contacting her in the future, and counsel fees. As noted, defendant submitted those cards to a handwriting analyst, who provided defendant with an expert opinion that the cards were probably sent to defendant by plaintiff.[4]

When reviewing a dismissal under *Rule* 4:6–2(e) for failure to plead a cause of action, we must search the complaint or counterclaim in depth and with liberality to determine whether a cause of action can be gleaned "even from an obscure statement of claim, opportunity being given to amend if necessary." *Printing Mart–Morristown v. Sharp Electronics Corp.*, 116 *N.J.* 739, 746, 563 *A.*2d 31 (1989) (quoting *Di Cristofaro v. Laurel Grove Memorial Park*, 43 *N.J.Super.* 244, 252, 128 *A.*2d 281 (App.Div.1957)). The inquiry of a reviewing court "is limited to examining the legal sufficiency of the facts alleged on the face of the complaint." *Printing Mart, supra,* 116 *N.J.* at 746, 563 *A.*2d 31 (citing *Rieder v. Department of Transportation*, 221 *N.J.Super.* 547, 552, 535 *A.*2d 512 (App.Div.1987)). The proper inquiry is thus whether a cause of action is suggested by the facts. *Printing Mart, supra,* 116 *N.J.* at 748, 563 *A.*2d 31 (citing *Velantzas v. Colgate–Palmolive Co., Inc.*, 109 *N.J.* 189, 192, 536 *A.*2d 237 (1988)). Every

---

[4] Nothing in this opinion should be read to imply that this court accepts the findings of the handwriting analyst. We merely note the existence of the analyst's reports in the record.

reasonable inference of fact is accorded the party whose claim is being assessed and that a motion to dismiss on these grounds is rarely granted. *Printing Mart, supra,* 116 *N.J.* at 746, 563 *A.*2d 31.

In response to plaintiff's motion to dismiss, defendant provided the court with a copy of her expert report which was provided by a handwriting analyst who opined that the cards were "probably" sent by plaintiff. The judge first concluded that defendant's claim of defamation was barred by the statute of limitations.[5] She then concluded that defendant's claim of harassment should be dismissed under the doctrine of *de minimis non curat lex,* i.e., the law does not care for, or take notice of, very small or trifling matters. The doctrine of *de minimis* "has been considered to apply where no damage is implied by law from the wrong, and only trifling or immaterial damage results therefrom." *Schlichtman v. New Jersey Highway Authority,* 243 *N.J.Super.* 464, 472, 579 *A.*2d 1275 (Law Div.1990). Indeed:

> It is not only those who are greatly damnified by the illegal act of another to whom the law gives redress, but its vindication extends to every person who is damnified at all—unless, indeed, the loss sustained be so small as to be unnoticeable by force of the maxim, *"De minimis non curat lex."*
>
> [*Beseman v. Pennsylvania R.R. Co.,* 50 *N.J.L.* 235, 13 *A.* 164 (Sup.Ct.1888), *aff'd,* 52 *N.J.L.* 221, 20 *A.* 169 (E. & A. 1890).]

Here, defendant alleged that the receipt of anonymous cards was a form of harassment which caused her to seek professional therapy. *N.J.S.A.* 2C:33–4 defines harassment as follows:

> Except as provided in subsection d., a person commits a petty disorderly persons offense if, with purpose to harass another, he:
>
> a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
>
> c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
>
> [*Ibid.*]

---

[5] Although defendant's complaint filed under the caption *Shuster v. Paternoster* alleged libel, defendant's counterclaim only alleged defamation.

It seems clear that defendant's counterclaim did allege a cause of action for harassment predicated upon the alleged mailing by plaintiff of three anonymous cards, on Valentine's Day 1991, 1994 and 1995, within the purview of *N.J.S.A.* 2C:33-4(a). Defendant's contention that receiving those cards caused her to seek psychological therapy was sufficient, treating the counterclaim with liberality, to withstand plaintiff's motion to dismiss. *See Printing Mart, supra,* 116 *N.J.* at 746, 563 *A.*2d 31. Although defendant's claim of defamation may be barred by the statute of limitations, we see no reason why giving false reports to the police in 1991 and 1992 could not be combined with the mailing of anonymous cards in 1994 and 1995 to demonstrate a course of conduct within the purview of *N.J.S.A.* 2C:33-4(c). We therefore conclude that the judge erred, particularly in predicating her ruling on the doctrine of *de minimis,* without first having heard evidence from defendant and her treating psychologist.

Although the component of defendant's counterclaim alleging defamation may have been barred by the statute of limitations, defendant's separate motion to reinstate her original complaint was also denied. Defendant's allegations of libel, slander, and other tortious conduct in her original complaint were not barred by the statute of limitations when that complaint was filed. Plaintiff's original complaint had been dismissed *without prejudice.* As such, a voluntary dismissal does not prevent a claimant from reinstituting the action. *Mystic Isle Development Corp. v. Perskie & Nehmad,* 142 *N.J.* 310, 332, 662 *A.*2d 523 (1995) (holding that a claim that has been dismissed without prejudice may be reinstituted without violating the entire controversy doctrine); *Malhame v. Borough of Demarest,* 174 *N.J.Super.* 28, 30–31, 415 *A.*2d 358 (App.Div.1980). Since defendant did not require the court's permission to reinstitute her original complaint, we can discern no reason why that relief was denied. Additionally, a party may seek reinstatement of a dismissed complaint by leave of court for good cause shown. *See Mason v. Nabisco Brands, Inc.,*

233 *N.J.Super.* 263, 268, 558 *A.*2d 851 (App.Div.1989). We, of course, do not conclude that the original complaint, if reinstated, will withstand a later motion to dismiss on statute of limitations grounds, nor do we conclude that any argument raised in response predicated upon the theory of "relation back." *See R.* 4:9–3; *Giambuttista v. Bradlees, Inc.,* 130 *N.J.Super.* 381, 327 *A.*2d 256 (Law Div.1974).

## III

Defendant also contends that the judge erred in refusing to accept her third-party complaint. We note that the judge originally gave defendant until February 14, 1995, to file an amended answer and counterclaim. That directive did not specifically limit defendant's right to file a third-party complaint. The judge's decision to reject the filing of the third-party complaint was clearly error unless defendant's initial answer dated January 22, 1995, was served earlier than February 2, 1995. *Rule* 4:8–1 permits a defendant to file a third-party complaint as of right within thirty days after service of the original answer. Yet, it is clear that the judge did not reject the filing of the third-party complaint because it violated *Rule* 4:8–1. The rejection was predicated on the prior directive that an amended answer and counterclaim were to be filed by February 14, 1995. The record on appeal does not reflect the actual date that the original answer was served on plaintiff's counsel. It is clear, however, that the third-party complaint, which defendant attempted to file on March 2, 1995, would only be untimely if defendant served her original answer earlier than February 2, 1995. We therefore conclude that the judge's decision was error. In reaching our conclusion, we do not rule that the third-party complaint, when filed, will withstand a motion to dismiss brought by the intended third-party defendants. We only conclude that defendant should not have been precluded from filing her third-party complaint unless the judge specifically found that the filing violated the time-constraints in *Rule* 4:8–1.

## IV

Defendant also contends that the judge erred when she refused to accept defendant's amended counterclaim on March 3, 1995. We agree. *Rule* 4:9–1 permits a defendant to file an amended counterclaim "at any time before a responsive pleading is served." Plaintiff's response to defendant's initial counterclaim was in the form of a motion, filed March 7, 1995, seeking to dismiss the counterclaim. Thus, defendant's attempt to file an amended counterclaim preceded plaintiff's response and was therefore timely filed.

## V

Lastly, defendant challenges the judge's decision denying her request to receive a copy of the resolution of the Elizabeth Board of Education that authorized plaintiff to institute this action. The judge simply concluded that defendant had no standing to demand that relief. The judge's conclusion totally disregarded the description of defendant in her proposed third-party complaint. Defendant asserted that she was filing that action as a citizen and taxpayer of the City of Elizabeth.

The State of New Jersey has a strong commitment to access to public records. *See South Jersey Publ'g. Co., Inc. v. New Jersey Expressway Auth.*, 124 *N.J.* 478, 489, 591 *A.*2d 921 (1991). In New Jersey there is a common law right to inspect governmental records. *Id.* at 487, 591 *A.*2d 921. The Open Public Meetings Act, *N.J.S.A.* 10:4–6 to –21, and the Right to Know Law, *N.J.S.A.* 47:1A–1 to –4, also protect this right of inspection. *South Jersey Publ'g., supra,* 124 *N.J.* at 489, 591 *A.*2d 921.

Before a party may exercise this right, she must "establish an interest in the subject matter of the material" sought. *Id.* at 487, 591 *A.*2d 921 (citing *Irval Realty, Inc. v. Board of Public Util. Comm'rs.*, 61 *N.J.* 366, 372, 294 *A.*2d 425 (1972)). "The interest does not have to be purely personal, but rather '[a]s one citizen or taxpayer out of many, concerned with a public problem

or issue, he might demand and be accorded access to public records bearing upon the problem, even though his individual interest may [be] slight.'" *South Jersey Publ'g., supra,* 124 *N.J.* at 487, 591 *A.*2d 921 (quoting *Irval Realty, supra,* 61 *N.J.* at 372, 294 *A.*2d 425). The Right to Know Law, however, eliminated the standing requirement; under that law, "one need only be a citizen of the State to obtain access to public records." *South Jersey Publ'g., supra,* 124 *N.J.* at 489, 591 *A.*2d 921; *see also N.J.S.A.* 47:1A-2.

 If a court finds that a challenging party has an interest in the documents, it must next determine whether the documents are, indeed, public records. *South Jersey Publ'g., supra,* 124 *N.J.* at 487, 591 *A.*2d 921. The common law defines a "public record" as:

[O]ne required by law to be kept, or necessary to be kept in the discharge of a duty imposed by law, or directed by law to serve as a memorial and evidence of something written, said, or done, or a written memorial made by a public officer authorized to perform that function, or a writing filed in a public office. The elements essential to constitute a public record are ... that it be a written memorial, that it be made by a public officer, and that the officer be authorized by law to make it.

[*Id.* at 487–88, 591 *A.*2d 921 (quoting *Nero v. Hyland,* 76 *N.J.* 213, 222, 386 *A.*2d 846 (1978)).]

The Right to Know Law uses a slightly narrower, but complementary, definition of "public record." *See South Jersey Publ'g., supra,* 124 *N.J.* at 489, 591 *A.*2d 921; *see also N.J.S.A.* 47:1A-2. Before authorizing inspection of public records, a court must also balance the party's interest in the information against the public's interest in confidentiality. *South Jersey Publ'g., supra,* 124 *N.J.* at 488, 591 *A.*2d 921.

Similarly, the Open Public Meetings Act requires that all public entities keep "reasonably comprehensible minutes of all ... meetings ... which shall be promptly available to the public to the extent that making such matters public shall not be inconsistent with" the legislative purposes of the Act. *N.J.S.A.* 10:4-14. The Act enumerates specific exceptions to this rule. For instance, a public entity may exclude the public from "that portion of a

meeting at which the public body discusses: ... (7) Any pending or anticipated litigation ... in which the public body is, or may become a party." *N.J.S.A.* 10:4–12b.

These concepts were not evaluated by the judge in denying defendant's motion. Additionally, we consider the decision premature. The third-party complaint had not been accepted for filing. The judge, as we have already noted, should have permitted defendant to file her third-party complaint and should have deferred any ruling on defendant's request as it pertained to the records of the Elizabeth Board of Education until it was served with the third-party complaint. Once served, the Board would then have had the opportunity to either respond voluntarily to the document request, or to resist defendant's motion for a release of the resolution. Deciding defendant's motion on the basis of lack of standing was clearly error.[6]

We reverse and remand each component of the July 6, 1995, order which memorialized the various procedural rulings of May 1, 1995. We direct defendant to file all appropriate pleadings within thirty days of the date of this opinion and to expeditiously serve her third-party complaint upon all named third-party defendants. Plaintiff shall file his answer to defendant's counterclaim within twenty days of this opinion.

---

[6] Defendant's appeal also sought a remand and the reassignment of this case to a different trial judge. The original motion judge is no longer assigned to the Law Division. We therefore conclude defendant's demand is moot.