**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1517-17T2

COMMUNITY CORPORATION OF
HIGH POINT, INC.,

      Plaintiff-Respondent,

v.

PONKY, INC., JAMES GOLDEN,
KRUMPFER REAL ESTATE, LLC and
JOSEPH KRUMPFER,

      Defendants-Appellants.

_____

Argued September 12, 2018 – Decided  September 27, 2018

Before Judges Yannotti and Natali.

On appeal from Superior Court of New Jersey, Chancery Division, Sussex County, Docket No. C-000017-17.

Robert J. Kenny argued the cause for appellants (Hoagland, Longo, Moran, Dunst & Doukas, LLP, attorneys; Kathleen Huntley-Robertson and Richard J. Mirra, of counsel and on the briefs; Ken Cesta and Robert J. Kenny, of counsel).

Jared M. Lans argued the cause for respondent.

PER CURIAM

In this appeal, we consider whether the trial court erred in permanently enjoining defendants from constructing and operating a real estate office contrary to a homeowners' association's by-laws. After a careful review of the record, we conclude the procedural framework outlined in Rules 4:52-1 and -2 precluded the entry of a permanent injunction. However, because plaintiff clearly and convincingly established the need for interim injunctive relief in accordance with Crowe v. DeGioia, 90 N.J. 126 (1982), we vacate the order under review to the extent it granted a permanent injunction, modify the order to impose preliminary injunctive relief, and remand the matter to the trial court for further proceedings.

Plaintiff Community Corporation of High Point, Inc. (CCHP) is a homeowners' association that manages, maintains, and operates a residential, membership-based community known as High Point Country Club Community (Community) located in Montague Township, New Jersey. It was created pursuant to the January 2, 1985 order entered by the court in Altamount Development Corp. v. Property Owners, et al., Sussex County, Docket No. C-4307-81E (Ch. Div. 1985) (Altamount Order). The Altamount Order established

the Community within Montague Township's R-4 zone, a high density residential district that permits:

(a) Single-family detached [housing];
(b) [and the] following uses existing at the time of adoption of [the R-4 residential district]:
  1. Single-family semi-detached residences;
  2. Two-family detached, two-family semi-attached residences;
  3. Multiple dwellings containing not more than six (6) dwelling units;
  4. Golf courses; [and]
  5. Restaurants, Taverns and Bars.

The Altamount Order further created a scheme of restrictions and covenants that affect all land, premises and dwelling units within the Community. Consistent with the Altamount Order, CCHP established a Board of Trustees (CCHP Board) charged with adopting by-laws to administer and manage the residences and recreational facilities. Article 6, Section 4 of the by-laws provides:

[e]xcept for commercial uses which are in existence on the date the [b]y-[l]aws become effective, there shall be no commercial uses conducted in any Dwelling Unit or within the Community except by express written consent of the [CCHP Board]. Nothing in this Section shall be deemed to abrogate or impair any law, statute, ordinance, covenant, agreement or restriction in any manner prohibiting such commercial use.

Defendant Ponky, Inc., (Ponky) owns a golf course and clubhouse within the Community and is subject to the by-laws. Defendant Joseph Krumpfer is the owner and managing member of defendant Krumpfer Real Estate, LLC (Krumpfer Real Estate), a New Jersey-licensed real estate company.

In March 2017, plaintiff became aware that Ponky intended to lease a portion of the clubhouse, previously used for CCHP board meetings, to Krumpfer Real Estate for use as a sales office. Shortly thereafter, plaintiff notified Ponky that its proposed actions violated Article 6, Section 4 of the by-laws and that Ponky was required to obtain written approval from the CCHP Board before the lease could proceed. According to plaintiff, without any municipal approvals and despite the clear language in the by-laws and its written objection, Ponky nevertheless commenced construction at the clubhouse.

Eventually, Ponky sought approval from the CCHP Board and a meeting was scheduled to vote on Ponky's request after notice was sent to the Community. Prior to the meeting, the CCHP Board received a letter from another CCHP resident who requested permission to operate a real estate office and insurance brokerage within the Community in the event that Ponky's application was granted. The CCHP Board voted against defendants' request at its May 7, 2017 annual meeting.

Defendants applied to the Montague Township Land Use Board (MTLUB) for a use variance, which would allow Krumpfer Real Estate to operate the real estate office in the clubhouse. On June 2, 2017, after Montague Township issued a stop work order, defendants ceased all construction work.

On June 5, 2017, plaintiff filed a verified complaint and order to show cause seeking a preliminary and permanent injunction to enjoin defendants from "continuing any activity to convert the existing space into a real estate office" and restraining defendants from "making application before the MTLUB for a use variance to permit the real estate office" in the clubhouse. Plaintiff also sought a mandatory injunction restoring the property to its previous condition and to provide plaintiff with appropriate space to conduct meetings.

In response to the order to show cause, the Krumpfer defendants filed only a letter brief without accompanying affidavits or certifications. Ponky and defendant James Golden, Ponky's owner and managing member, filed a letter brief with a certification from Golden claiming the verified complaint was unauthorized because it was not approved by the CCHP Board.

On June 26, 2017, after oral argument, the court denied plaintiff's request for interim injunctive relief. The court considered the Crowe factors, and determined that a temporary restraining order was not warranted based, in large

part, on the absence of irreparable harm as Montague Township had issued a stop work order. The court reasoned that because defendants were in a "stop work situation", injunctive relief was unnecessary at that time. The court adjourned the order the show cause "for a relatively short return date" until after the next MTLUB meeting, scheduled for July 2017, when defendants' pending variance application was expected to be decided. Anticipating that the MTLUB would meet as scheduled, the court re-scheduled the hearing on the order to show cause for July 10, 2017.

The MTLUB met on July 14, 2017, but defendants requested the first of four adjournments. On October 12, 2017, the MTLUB dismissed defendants' variance application without prejudice.

As a result of the adjournments, the previously scheduled July 10, 2017 order to show cause hearing was rescheduled to October 19, 2017. Other than the previously filed Golden certification, defendants submitted no further certifications or affidavits in opposition to plaintiff's application and failed to answer the verified complaint.

After oral argument, the court issued an oral opinion and concluded that plaintiff satisfied Crowe's four-prong test for preliminary injunctive relief. The

court determined that permitting a non-conforming use in the Community constituted irreparable harm because:

> [t]here is a community scheme. The defendants don't seem to accept that. But we have here a community association designed to be a residential area within certain narrow exceptions. And the court can understand the community's desire to maintain – the ambiance, if you will, and the plan and scheme and the atmosphere of a community with … at least no new commercial undertakings. Disruption of that scheme can amount to irreparable harm because property owners have acquired their properties on the understanding that the community would be maintaining pursuant to its … constitution, which is the [Altamount Order] and its by[-]laws, and the consent orders into which the parties have entered in the past.

The court further concluded that the legal right underlying plaintiff's claim was settled because the by-laws expressly precluded launching "a new commercial undertaking . . . without the [CCHP Board's] authority or without the [CCHP Board's] approval." As to the third prong of Crowe, the court ruled that plaintiff established a reasonable probability of success on the merits because of the "proof submitted by way of the verification in the verified complaint" and the paucity of competing evidence. The court stated:

> the only record evidence that the court has is that attached to the verified complaint, as well as the certification that Mr. Golden did submit . . . most of which is hearsay and none of which addresses directly the issues raised in the verified complaint.

. . . .

> I don't know that to make of [defendants' argument] because I don't have any proof of it. What I have is a by[-]law that says in order to operate commercially within the community, there has to be [CCHP Board] approval. And there's no approval.

Finally, the court determined the equities favored plaintiff because Ponky understood the community scheme prior to contracting with the Krumpfer defendants and was obligated to obtain the CCHP Board's written approval before embarking on a new commercial undertaking at the clubhouse.

While the court applied the Crowe criteria for a preliminary injunction and found that plaintiff had established that relief was warranted, the court did not enter a preliminary injunction. Instead, the court entered a "narrow order of injunction" on November 13, 2017 that permanently "enjoined and restrained defendants from continuing any activity to convert the clubhouse space into a real estate office and otherwise operating a real estate office" at the clubhouse without first obtaining legally required approvals, including from the CCHP Board. The court referred the remaining claims in the verified complaint to arbitration in accordance with the terms of a prior consent order entered between the parties and dismissed the litigation.

Defendants appeal and raise the following arguments: (1) the trial court erred in granting plaintiff a permanent injunction and terminating the action on the return date of the order to show cause; (2) the trial court erred in granting plaintiff a permanent injunction because plaintiff failed to show a continuing irreparable harm; (3) the trial court erred in granting plaintiff a permanent injunction because it made an erroneous and unsupported conclusion that defendant Ponky was required to gain approval by the CCHP Board of Trustees prior to leasing the clubhouse space for use as a real estate office; and (4) defendants were denied due process when the trial court granted plaintiff a permanent injunction on the order to show cause return date and terminated the action prior to a full and fair hearing.

We agree with defendants that the trial court erred in granting a permanent injunction on the return date for the order to show cause. As explained by the court in <u>Waste Management v. Union County Utilities Authority</u>, 399 N.J. Super. 508, 516 (App. Div. 2008), "[t]he process adopted in our court rules for seeking injunctive relief applications … does <u>not</u> allow for an order to show cause for the entry of a <u>permanent</u> injunction; rather, it permits only the entry of an order requiring a party to show cause why a temporary restraint or an interlocutory injunction should not issue." <u>Id.</u> (emphasis in original) (citing <u>R</u>.

4:52–1 and 2; <u>Solondz v. Kornmehl</u>, 317 N.J. Super. 16, 20–21, (App. Div. 1998)).

In addition, we note that the order to show cause vaguely referenced plaintiff's intention to proceed as a "summary action." Our court rules, however, precluded plaintiff from proceeding in this fashion. Although <u>Rule</u> 4:67-1(a) permits "the entry of an order at the commencement of the action that requires a defendant to show cause why final judgment should not be entered," <u>Waste Management</u>, 399 N.J. Super. at 516, n.2, proceeding under this <u>Rule</u> is allowed only when a "rule or statute" authorizes the court to resolve the matter summarily. <u>Id.</u> Here, there was no applicable rule or statute that permitted plaintiff to proceed summarily.

Further, a permanent injunction was improperly issued here because neither the proposed order to show cause nor the resulting proceedings suggested that defendants consented to summary disposition of the dispute. While the verified complaint sought permanent and preliminary injunctive relief, the order to show cause requested, in addition to interim relief prior to the return date, only "preliminary restraints."

In addition, at the October 19, 2017 return date, the court clearly treated the matter as a proceeding to issue a preliminary injunction. For example, the

court relied on <u>Crowe</u> rather than <u>Sheppard v. Township of Frankford</u>, 261 N.J. Super. 5, 10 (App. Div. 1992), which addresses the standard for permanent injunctive relief, and the court characterized the proceeding as an adjournment of the June 26, 2017 hearing which denied "the application for injunctive relief on a temporary basis."

Consequently, we do not find persuasive plaintiff's arguments that the word "summary" in the order to show cause or the provision that default would be entered if defendants failed to answer, somehow alerted defendants that a permanent injunction would issue at the October 19, 2017 proceeding. As the <u>Waste Management</u> court explained:

> [w]e are mindful that in practice it is not unheard of for parties to consent to a final determination on the return of an order to show cause for an interlocutory injunction when the facts are not in dispute or when an evidentiary hearing would add no illumination to the court's resolution of the issues presented. It is also not uncommon, when a plenary hearing is conducted for the purposes of resolving factual disputes on an interlocutory injunction application, for the parties to consent to have the trial judge render a final judgment. Such a sensible and practical approach often provides the parties with a swift and efficient resolution of their disputes that is not inconsistent with our rules of procedure, which favor "just determination[s], simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." <u>R</u>. 1:1–2. (citations omitted). Accordingly, we do not intend to preclude pragmatism in the resolution of

> disputes, <u>but we must insist that such an approach is only appropriate when the parties understand and consent to a summary disposition of their disputes. Otherwise, the process would possess only the qualities of simplicity and efficiency, not fairness or justice.</u>
>
> [<u>Waste Management</u>, 399 N.J. Super. at 518 (emphasis added).]

Although we have determined that the trial court erred by entering a permanent injunction, we conclude the record supports the trial court's findings on the <u>Crowe</u> factors. Based on those findings, the court should have entered a preliminary injunction to preserve the status quo pending further proceedings on plaintiff's complaint. <u>Id.</u> at 519.

In <u>Crowe</u>, the Supreme Court clearly established the standards for granting a preliminary injunction. <u>Paternoster v. Schuster</u>, 296 N.J. Super. 544, 555-56 (App. Div. 1997) (citing <u>Crowe</u>, 90 N.J. at 132–34). When a trial court determines whether to grant interim injunctive relief, it must consider: (1) whether the injunction is "necessary to prevent irreparable harm;" (2) whether "the legal right underlying the claim is unsettled;" (3) whether the applicant has made "a preliminary showing of a reasonable probability of ultimate success on the merits;" and (4) "the relative hardship to the parties in granting or denying [injunctive] relief." <u>Crowe</u>, 90 N.J. at 132–34. These factors must be clearly and convincingly established. <u>McKenzie v. Corzine</u>, 396 N.J. Super. 405, 414

12

(App. Div. 2007); Subcarrier Communications, Inc. v. Day, 299 N.J. Super. 634, 639 (App. Div. 1997). And, "although it is generally understood that all these factors must weigh in favor of injunctive relief," McKenzie, 396 N.J. Super. at 414, a more flexible approach may be applied when the preliminary injunction seeks to merely to maintain the status quo. Waste Management, 399 N.J. Super. at 520 (citing General Elec. Co. v. Gem Vacuum Stores, Inc., 36 N.J. Super. 234, 236-37 (App. Div. 1955)).

As noted, the court must consider whether the applicant demonstrated a reasonable likelihood of success on the merits. Crowe, 90 N.J. at 133. This involves a fact sensitive analysis that "requires a determination of whether the material facts are in dispute and whether the applicable law is settled." Waste Management, 399 N.J. Super. at 528 (citations omitted). However, when considering this factor in the context of a preliminary injunction:

> doubt about a suit's merits does not entirely preclude the entry of an interlocutory injunction designed to preserve the status quo. So long as there is some merit to the claim, a court may consider the extent to which the movant would be irreparably injured in the absence of pendente lite relief, and compare that potential harm to the relative hardship to be suffered by the opponent if an injunction preserving the status quo were to be entered. If these factors strongly favor injunctive relief, the status quo may be preserved through injunctive relief even though the claim on the merits is uncertain or attended with difficulties.

[Id. at 535 (citation omitted).]

Here, the record shows that plaintiff established a reasonable likelihood of success on the merits. The by-laws and related formation documents govern the relationship between the parties. See Reilly v. Riviera Towers Corp., 310 N.J. Super. 265, 269 (App. Div. 1998) (holding that "the relationship between a cooperative and its shareholders should be determined by its Certificate, by-laws, and proprietary lease and that the documents must be read together"); Faunce v. Boost Co., 15 N.J. Super. 534, 538 (Ch. Div. 1951) (holding "[t]he certificate of incorporation, constitution and bylaws of the corporation constitute a contract between the corporation and its stockholders and the stockholders inter sese").

Under Article 6, Section 4 of the by-laws, "commercial uses" may not be established in a dwelling unit in the Community without the express written consent of the CCHP Board, except for those "in existence on the date [the] by-laws became effective." The trial court interpreted the by-laws as clearly and unequivocally precluding defendants from operating a real estate office in the clubhouse because that specific use was not in existence when the by-laws became effective. Plaintiff established a reasonable likelihood it will prevail on its interpretation of the by-laws. It is undisputed that the CCHP Board rejected

14

Ponky's request to construct space within the clubhouse for the purpose of a real estate office.

Defendants claimed that use of the space in the clubhouse for a real estate office did not require approval by the CCHP Board of Trustees because similar commercial uses existed when the by-laws became effective. However, defendants did not identify the prior uses that existed before the by-laws took effect. Indeed, the trial court observed that defendants had submitted "no proof about what has gone on in the past." In this regard, we note that in his certification, Golden did not provide details regarding the alleged prior commercial use. Moreover, most of his certification consisted of statements that were either irrelevant or inadmissible hearsay. Thus, based on the evidence presented before the trial court, plaintiff established a reasonable likelihood of success on its claim that the space in the clubhouse could not be used as a real estate office without prior written approval of the CCHP Board.

Moreover, the record supports the judge's finding that the injunctive relief was warranted to prevent irreparable harm and preserve the status quo. As the trial court correctly found, without injunctive relief, "the community scheme would be compromised" and a deviation from that scheme would irreparably harm the community and its members. In addition, no party has claimed that an

adequate remedy of law exists to address a potential violation of the by-laws. Finally, the record shows that the public interest will not be harmed by the grant of a preliminary injunction.

Defendants' claims that injunctive relief is unnecessary because construction of the real estate office was halted, and zoning approval applications abandoned without prejudice, is misplaced. To the extent defendants maintain these actions vitiate any claims of imminent irreparable harm, we observe that defendants started construction without seeking CCHP Board approval and did not cease when requested by plaintiff, but only when Montague Township affirmatively issued a stop work order. Under these circumstances injunctive relief is warranted to preserve the status quo.

Accordingly, we reverse the November 13, 2017 order to the extent it granted a permanent injunction, modify the order to grant preliminary injunctive relief, and remand the matter to the trial court for further proceedings on plaintiff's complaint. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16

A-1517-17T2