754 A.2d 1232 (2000)
333 N.J. Super. 195
Sibyl ALY and Belgica Ysabel Correa DeSoto, Plaintiffs-Respondents,
v.
Gustavo GARCIA, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted April 12, 2000.
Decided July 18, 2000.
*1233 Espinosa & Espinosa, Carlstadt, for defendant-appellant (Juan Guillermo Espinosa, on the brief).
James J. Tutak, Kearny, for plaintiffs-respondents.
Before Judges STERN, WEFING and STEINBERG.
The opinion of the court was delivered by STEINBERG, J.A.D.
Defendant Gustavo Garcia appeals from a judgment, based upon a jury verdict, entered against him in favor of plaintiff Sibyl Aly (Aly) and Belgica Ysabel Correa DeSoto (DeSoto). The jury awarded each plaintiff $8,000 in compensatory damages and $6,500 in punitive damages. We reverse.
Aly and DeSoto were tenants in a building owned by defendant and his wife. The Garcias operated a small family restaurant in the building. Aly lived with her companion and their child on the second floor of the building. DeSoto lived on the third floor with her husband, as well as her two sons and a daughter.
Aly testified that she initially had no problems with Garcia. However, approximately *1234 one month after she moved in Garcia began to make suggestive comments to her when he was in her apartment for the purpose of making repairs. She said Garcia said "things like, I was a good one, that I was pretty, that he would like to go to bed with me". He also pointed to the bed and said "that [it] was good to get me in it". She said Garcia touched her buttocks on one occasion, and touched her breast on another occasion. She said he always tried to touch her. He also said she "had a good behind and good legs". Aly said she told Garcia "that what he was doing constituted sexual harassment" but he said he was not afraid. She also said that on two occasions Garcia said he would like "to go out and have sex with [her]". He told her that her partner "was no good for [her], that [she] needed a man like him". Although she continued to object, Garcia's conduct persisted. He stopped supplying heat, making repairs, and also threatened to report her companion to the "Immigration Service" because he was "not legal in this country". As a result, she vacated the apartment.
Aly said Garcia's conduct made her "very uncomfortable". She said she felt frightened, humiliated and abused. She said she had "nervous tension, [she] couldn't sleep. She couldn't do anything". When asked how long those feelings lasted, she said "about five months, six months, a long time". After she moved she no longer felt "that constant pressure, that daily constant pressure". She said as she was testifying that she felt "very bad. Very uncomfortable, because that's relive [sic] the story all over again". Aly admitted she did not seek the assistance of a doctor. She claimed she could not afford one. She also admitted that she never went to a psychologist or clergyman, or sought counseling of any type.
DeSoto testified that she worked in the restaurant. At first defendant behaved "[v]ery well" towards her, however, on occasion, "he would get fresh". She explained that defendant "would say, boy, are you a good one". On several occasions in October 1995, as he was passing by her in the restaurant he would "brush against [her]" and say "that it would stand, that he would get an erection". DeSoto told him she "was going to take him to court". Defendant also would say, "your husband is no good for you. He's useless to you. This is what you can use. This is what would be of use to you", referring to his penis. She said on one occasion he took out his penis and said "[t]his is what you need, because your husband doesn't satisfy you". She said she left the restaurant and never returned.
She also said that during the same period of time "[h]e would always get fresh" towards her at the apartment. She said that from June 1995 to February 1996, her husband was in Santo Domingo. She claimed defendant constantly entered the apartment "at 10 o'clock at night and 7 in the morning" and said he wanted to take advantage of her husband's absence. "He would say, I have a big penis, and when it gets big, when I get an erection, I have a very big head and I will satisfy you, not your husband. I will satisfy you." Defendant told DeSoto he would tell her husband that she "was looking for men out in the street". He also said he was going to invite DeSoto's daughter "to a restaurant... and then [he would] take her upstairs, to a hotel". She also testified that when she resisted defendant's advances he turned off her heat and electricity.
When asked on direct examination how these incidents made her feel, DeSoto said: that bad for me. It was like an atomic bomb falling on me. The tears that I was shedding, they were blood tears that I was shedding. I even told my daughter that I wanted to kill myself, that I didn't want to live. And my little one, my little daughter, she was just about to confront him ... when they would come over.
When asked how she felt after she moved out of the apartment, DeSoto said:
I felt a little better, because I was away from him that he could do something to me. But I always have the dead sensation, *1235 the bad feeling that I was going to see him and that he was going to do something to me. He made me sick with my nerves.
She said she felt "terrible" as she was testifying. DeSoto also conceded that she never sought medical or psychological help.
DeSoto's husband Julio testified that she told him that Garcia asked her "for sex" and showed her his penis. Julio said she was very upset when she told him. He said after they moved, "in a certain way, she calmed down some, but then when you touched that subject, well, then she gets out of control".
On this appeal, defendant makes the following arguments: (1) the trial judge erred in permitting the complaint to be amended "to change the cause of action from sexual harassment to harassment", and (2) the jury charge "was defective in that it permitted harassment as a cause of action in a civil suit".
Plaintiffs' complaint consisted of four counts. The first count sought damages as a result of defendant's "sexual harassment" of plaintiffs. The second count alleged that defendant negligently engaged in the language and conduct complained of. The third count alleged that defendant intentionally inflicted emotional distress upon plaintiffs. Finally, the fourth count alleged that defendant had committed assaults upon plaintiffs.
We are unable to determine from the record, or the appellate briefs, why the case was submitted to the jury only on the theory of harassment. Without citation to the record, in their appellate brief, plaintiffs assert that although they originally alleged a cause of action based upon sexual harassment, their attorney "subsequently became concerned because the overwhelming majority of the reported decisions regarding civil actions for sexual harassment concerned workplace incidents", and, accordingly, "the case went to the jury on the question of harassment". A truncated charge conference was held immediately prior to summations. Over defendant's objection, relying upon Paternoster v. Shuster, 296 N.J.Super. 544, 687 A. 2d 330 (App.Div.1997), the judge indicated that he was only going to submit the case to the jury on the theory of harassment. Defendant contended that there is no civil cause of action of harassment. The judge rejected that contention. Plaintiffs' attorney acquiesced in the judge's decision to only charge harassment, responding "[v]ery good". We note that our appellate review would have been facilitated had the judge and the attorneys been more thorough in explaining why the other counts were not submitted to the jury.
Initially, we reject defendant's procedural contention that the judge erred in submitting the case to the jury under the theory of harassment, when sexual harassment was initially pleaded. R. 4:9-2 authorizes amendments of pleadings at trial in order to conform to the evidence. The rule authorizes amendments even over objection on the ground that the evidence is not within the issues raised by the pleadings if the presentation of the merits will be subserved and the objecting party fails to satisfy the court that the admission of the evidence would be prejudicial in maintaining the action or defense upon the merits. Ibid. The broad power of amendment should be liberally exercised unless undue prejudice would result. Kernan v. One Washington Park, 154 N.J. 437, 457, 713 A.2d 411 (1998); Colucci v. Oppenheim, 326 N.J.Super. 166, 179, 740 A. 2d 1101 (App.Div.1999), certif. denied, 163 N.J. 395, 749 A.2d 369 (2000). The decision as to whether to grant an amendment rests in the court's sound discretion. Ibid. Here, the judge's decision to charge on harassment, although not technically an amendment, merely substituted one theory for the other. Defendant does not claim surprise or an inability to defend. There were no new facts alleged. Although we conclude that the judge did not mistakenly exercise his discretion in this regard, for the reasons to be set forth later in this opinion, we determine that, substantively, the case should not have been submitted to the jury under a theory of harassment.
*1236 In deciding to submit the case to the jury under a theory of harassment, the judge relied upon N.J.S.A. 2C:33-4 which provides, in pertinent part, as follows:
A person commits a petty disorderly persons offense if, with purpose to harass another, he:
a. Makes, or causes to be made, a communication or communications anonymously, or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
* * *
c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
We leave for another day the decision as to whether N.J.S.A. 2C:33-4 creates a civil cause of action. We note that under certain circumstances, a violation of a penal statute can generate a civil remedy even where no such remedy is included in the act. Where a statute does not expressly confer a private right of action for its violation, the determination of whether it gives rise to a civil cause of action is governed, in part, by the following standards: (1) whether the plaintiff is one of the class for whose benefit the statute was enacted; (2) whether there is any evidence that the Legislature intended to create a private cause of action under the statutes, and (3) whether implication of a private cause of action would be consistent with the underlying purposes of the legislative scheme. Crusco v. Oakland Care Center, Inc., 305 N.J.Super. 605, 614, 702 A. 2d 1363 (1997). Indeed, a distinction may be drawn in cases where an individual seeks to enjoin another from violating the statute and cases in which a person seeks to recover monetary damages for the violation. Trustees of Local 478 Trucking and Allied Ind. Pension Fund v. Pirozzi, 198 N.J.Super. 297, 314, 486 A.2d 1288 (Law Div. 1983), aff'd, 198 N.J.Super. 318, 486 A.2d 1299 (App.Div.1984).
We recognize that Paternoster, supra, implicitly recognized a cause of action for harassment in concluding that the motion judge erred in granting a motion, pursuant to R. 4:6-2(c), for failure to state a claim upon which relief can be granted. There, the court considered the liberality ordinarily afforded a party opposing a motion to dismiss. However, Paternoster did not decide whether a cause of action for harassment gives rise to a claim of damages, as opposed to a claim for injunctive relief, and under what circumstances, if any, a claim for damages should go to the jury for its consideration.
Since plaintiffs conceded their only claim for damages related to their emotional distress, we consider their claim akin to one for the intentional infliction of emotional distress.[1] Because plaintiffs' claims are so closely allied to one for the intentional infliction of emotional distress, it is only appropriate that plaintiffs meet the damage threshold for that cause of action; to hold otherwise would provide an all-too-convenient vehicle to circumvent the clear guidelines the Supreme Court set forth in Buckley v. Trenton Sav. Fund Soc'y, 111 N.J. 355, 544 A.2d 857 (1988). In Buckley, our Supreme Court first recognized a cause of action for intentional infliction of emotional distress. In order to establish a claim for intentional infliction of emotional distress, the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe. Id. at 366, 544 A.2d 857. The distress must be so severe that no reasonable person could be expected to endure it. Severe emotional distress refers to any type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so. Taylor v. Metzger, 152 N.J. 490, 515, 706 A.2d 685 (1998). It is not enough to establish that a party is acutely upset by *1237 reason of the incident. In order to be actionable, the claimed emotional distress must be sufficiently substantial to result in physical illness or serious psychological sequelae. Schillaci v. First Fidelity Bank, 311 N.J.Super. 396, 406, 709 A.2d 1375 (App.Div.1998); Lingar v. Live-In-Companions, Inc., 300 N.J.Super. 22, 34-35, 692 A.2d 61 (App.Div.1997).
The severity of the claimed emotional distress involves questions of both law and fact. Buckley, supra, 111 N.J. at 367, 544 A.2d 857. Thus, the court decides, in the first instance, whether as a matter of law severe emotional distress can be found, and the jury then decides whether it has in fact been proved. Here, even when considered in the light most favorable to plaintiffs, we readily conclude that they have not satisfied the threshold of presenting a jury question as to whether their emotional distress was sufficiently severe and disabling as to give rise to a cause of action for damages. Moreover, we determine that even if there is a civil cause of action for damages for harassment when the sole damages claimed are emotional distress, it would be inappropriate not to hold plaintiffs to the same elevated standard of showing severe emotional distress. Accordingly, we conclude that under the facts here presented the evidence was insufficient to submit plaintiffs' claims for infliction of emotional distress to the jury. Neither plaintiff sought medical assistance. Nor did plaintiffs seek counseling of any kind. Although plaintiffs were understandably upset, there was no evidence from which a jury could conclude that they suffered distress so severe that a reasonable person could not be expected to endure it. Nor was there any evidence introduced from which a jury could conclude that they suffered emotional distress sufficiently substantial to result in physical illness, or a mental condition of a type which may be generally recognized and diagnosed by clinicians.
Reversed and remanded for the entry of judgment in favor of defendant, dismissing plaintiffs' complaint.[2]
NOTES
[1] We recognize that the complaint included a count for intentional infliction of emotional distress; the record does not disclose under what circumstances that claim was dismissed.
[2] We acknowledge that Aly claimed that defendant touched her breast on one occasion, and her buttock on another. We recognize that those acts constitute a battery. Russo Farms, Inc. v. Vineland Bd. of Educ., 144 N.J. 84, 105, 675 A.2d 1077 (1996). We also recognize that the fourth count of plaintiffs' complaint pleads assault. However, at the charge conference immediately prior to summations, the judge stated that he was only going to submit the case to the jury on theory of harassment, and plaintiffs' attorney responded "[v]ery good". If there was error in not charging battery, it was acquiesced in by plaintiffs' attorney. Ordinarily, trial errors invited, encouraged, or acquiesced in by a party do not warrant a new trial. State v. Loftin, 146 N.J. 295, 364-65, 680 A.2d 677 (1996); State v. Harper, 128 N.J.Super. 270, 277-79, 319 A.2d 771 (App.Div.), certif. denied, 65 N.J. 574, 325 A.2d 708 (1974). Moreover, counsel did not object to the failure to charge battery after the charge was given. Accordingly, we deem any objection to have been waived. R. 1:7-2; Bradford v. Kupper Assoc., 283 N.J.Super. 556, 573-74, 662 A.2d 1004 (App.Div. 1995), certif. denied, sub nom. Ware v. Agate Constr. Co., 144 N.J. 586, 677 A.2d 759 (1996) (the absence of an objection suggests that trial counsel perceived no error or prejudice, and, in any event, prevented the trial judge from remedying any possible defect in a timely manner).