**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4195-14T2

ROBERT A. D'ANGELO,

    Plaintiff-Appellant,

v.

OCWEN LOAN SERVICING, LLC,
A Wholly Owned Subsidiary of
OCWEN MORTGAGE SERVICING, LLC,
and U.S. BANK NATIONAL ASSOCIATION
as Trustee for the Certificate
Holders of the Mortgage Pass
Through Certificates 1997-R2,

    Defendants-Respondents.

_____

Submitted October 11, 2016 — Decided  February 23, 2017

Before Judges Leone and Vernoia.

On appeal from the Superior Court of New
Jersey, Law Division, Union County, Docket No.
L-1934-14.

Meyer L. Rosenthal, attorney for appellant.

Houser & Allison, APC, attorneys for
respondents (Danielle P. Light, of counsel and
on the brief).

PER CURIAM

Plaintiff Robert A. D'Angelo appeals an order dismissing his eleven-count amended complaint for failure to state a claim under Rule 4:6-2(e). Based on a review of the record and the applicable law, we uphold the dismissal of all of the counts except counts seven and nine. We affirm in part, reverse in part, and remand for further proceedings in accordance with this opinion.

## I.

Plaintiff filed an eleven-count complaint on May 22, 2014, which was amended on September 25, 2014, against defendants Ocwen Loan Servicing LLC, a wholly owned subsidiary of Ocwen Mortgage Servicing LLC (Ocwen), and U.S. Bank National Association as Trustee (Trustee) for the Certificate Holders of the Mortgage Pass Through Certificates 1997-R2, (Trust). The complaint alleged that over the course of twenty-two years, defendants[1] engaged in a pattern of misconduct by refusing to accept plaintiff's mortgage payments in order to claim default and file frivolous foreclosure actions against him. Because this appeal is from a dismissal of the complaint due to a failure to state a claim upon which relief may be granted, the following facts are largely derived from plaintiff's amended complaint.

---

[1] Plaintiff's complaint varies in addressing the defendants individually and collectively, without necessarily attributing any of the particular allegations to a particular party.

Count one of plaintiff's complaint alleges that on or about March 11, 1985, plaintiff executed a promissory note to Citibank, N.A. (Citibank) that was secured by a mortgage on a residential property. Plaintiff began making mortgage payments under the note and sought an accounting of the balance due. In 1993, "without explanation and accounting," Citibank filed a foreclosure action against plaintiff, which caused plaintiff to file a petition for bankruptcy.

Plaintiff's complaint asserts that upon information and belief, the note and mortgage were assigned to defendant Ocwen on December 23, 1996.[2] Plaintiff and Ocwen "and its predecessors" subsequently executed a settlement agreement (1998 settlement agreement)[3] that resolved plaintiff's bankruptcy case and the pending foreclosure action. The 1998 settlement agreement required plaintiff to resume making mortgage payments and Ocwen to provide plaintiff with an accounting of his loan balance and credit for all payments.

---

[2] Although not alleged in the complaint, defendants submit the loan was transferred from Citibank to a trust that became affiliated with various loan servicing entities including Ocwen and the mortgage is presently owned by defendant U.S. Bank as Trustee.

[3] The date of the settlement agreement is not included in the complaint, but based on the record, it appears to have been executed on or about May 15, 1998, the date on which plaintiff dismissed his first bankruptcy petition.

A-4195-14T2

Count one asserts that even after the execution of the 1998 settlement agreement, Ocwen failed to provide any accounting or proof that plaintiff's prior payments had been properly credited, and refused to accept plaintiff's continued payments or otherwise communicate with plaintiff or plaintiff's counsel.

Count two alleges that in 1999, "[d]efendant" commenced a second foreclosure action based on "the artificial default it claimed [against plaintiff]." From 1999 through February 2001, while the second foreclosure action was pending, Ocwen refused to accept plaintiff's payments without explanation. Count two asserts that during this time, Ocwen's representatives called plaintiff to "harass" him for nonpayment despite plaintiff's alleged submission of timely payments which Ocwen refused to accept.

In February 2002, Ocwen's second foreclosure action was dismissed because Ocwen allegedly failed to provide the requisite notice of intention to foreclose. Count two asserts Ocwen's actions and inactions in pursuing the second foreclosure suit while refusing to deal in good faith and accept payments caused plaintiff damages including "legal fees, costs and loss of time."

Following the second foreclosure action, plaintiff continued making payments from February 2002 through November 16, 2002. Count three of plaintiff's complaint asserts in 2002, defendants, "in the name of U.S. Bank, [Trustee] through Ocwen," filed a third

4                                              A-4195-14T2

foreclosure action. From 2003 through January 2005, during the pendency of the third foreclosure action, Ocwen allegedly accepted plaintiff's monthly payments. In February 2005, however, Ocwen again "arbitrarily refused to accept a payment . . . in order to create a default." Upon plaintiff's information and belief, the third foreclosure action was dismissed or not pursued.

Count four of plaintiff's complaint alleges defendants engaged in a continuous pattern of filing foreclosure actions in bad faith in an effort to "run[] up [p]laintiff's legal expenses." Count four asserts that in 2008, "[d]efendants," in the name "LaSalle Bank National Association as Trustee," filed a fourth foreclosure action (2008 foreclosure action). After unsuccessful mediation efforts, the 2008 foreclosure action, "like the three previous actions before it, was not pursued and resulted in a dismissal."

In 2012, prior to the dismissal of the 2008 foreclosure action, "[d]efendant" in the name of "U.S. Bank, [Trustee] for the [Trust]" filed a fifth foreclosure action. Count five alleges:

> Defendants' actions, while negligent at best, were reckless, deliberate and wanton in attempting . . . to bury the [p]laintiff in legal expense[s] and costs, not to mention causing angst and damages by the continued threat in taking [p]laintiff's home, knowing that the physical and mental damages could result

> . . . because of such reckless disregard of [p]laintiff's rights.

Count five asserts that the fifth foreclosure action was "unilaterally dismissed" without any notice to plaintiff.

The remainder of plaintiff's complaint (counts six through eleven) asserts various theories of relief based on the foregoing factual allegations. Counts six and ten assert damages related to plaintiff's alleged emotional injuries. Count six asserts "Ocwen and its representatives" willfully harassed and humiliated plaintiff for mortgage payments "causing embarrassment," "mental anguish, damage to [his] reputation, embarrassment, humiliation," and other damages.

Count ten asserts that defendants and their representatives knowingly made "false promises" to provide plaintiff with an accounting, thereby inducing plaintiff's reliance, while simultaneously filing baseless foreclosure actions. Count ten asserts such conduct was "deliberately done for the purpose of causing" plaintiff "anguish" and unnecessary litigation costs.

Count seven asserts that the pattern of defendants' misconduct alleged in the complaint caused damages including the imposition of late charges for plaintiff's purported nonpayment, charges for "forced insurance on the property," and interest and

costs related to untimely property tax payments and property inspections.

Count eight, similar to count four, directly accuses defendants of filing meritless foreclosure actions, and characterizes defendants' actions as "harassment." Count eight asserts "[a]s a result of the improper filing and continuation of five (5) separate foreclosure actions, [plaintiff] continues to suffer additional damages by way of incurring additional legal fees and costs aside from aggravation and emotional stress."

Count nine alleges violations of the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1 to -20. More specifically, count nine asserts defendants' actions and representations constituted "advertisements" as defined under the CFA, N.J.S.A. 56:8-1(a), and Ocwen failed to abide by its representations in servicing plaintiff's mortgage. Accordingly, count nine seeks treble damages pursuant to the CFA, N.J.S.A. 56:8-19, as well as "counsel fees, costs and other damages."

Count eleven essentially recapitulates plaintiff's overall theory that defendants and their representatives recklessly and deliberately harassed plaintiff for payments despite plaintiff's representations that payments were not being administered properly. It asserts that defendants' representatives failed to

7                                                          A-4195-14T2

act in good faith and made false promises to resolve the issues while knowing plaintiff would rely upon such representations.

On October 27, 2014, defendants moved to dismiss plaintiff's complaint under the doctrine of res judicata, arguing the claims asserted were identical to those alleged in plaintiff's answer and counterclaims in the 2008 foreclosure action that were dismissed on a motion for summary judgment. Alternatively, defendants argued counts one and two of plaintiff's complaint were claims for breach of the 1998 settlement agreement and were barred by the six-year statute of limitations. N.J.S.A. 2A:14-1. Defendants argued the remaining counts failed to state claims upon which relief may be granted and should be dismissed pursuant to Rule 4:6-2(e).

Following oral argument on defendants' motion, the trial court issued a written decision rejecting defendants' contention that plaintiff's claims were barred under the doctrine of res judicata[4] but finding each of the eleven counts in the complaint failed to state a claim upon which relief may be granted under Rule 4:6-2(e). The court entered an order dismissing the complaint. This appeal followed.

---

[4] Defendants did not file a cross-appeal challenging the court's rejection of their argument plaintiff's complaint is barred under the doctrine of res judicata. We therefore do not address that part of the court's order.

A-4195-14T2

Rule 4:6-2(e) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted[.]" When considering an application for relief under this rule, a court is required to "search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Major v. Maguire, 224 N.J. 1, 26 (2016) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)).

We review an order of dismissal under Rule 4:6-2(e) de novo and "apply the same test as the Law Division." Smerling v. Harrah's Entm't, Inc., 389 N.J. Super. 181, 186 (App. Div. 2006). In other words, "our inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint," and determining if "a cause of action is 'suggested' by the facts." Green v. Morgan Props., 215 N.J. 431, 451-52 (2013) (quoting Printing Mart, supra, 116 N.J. at 746). "The examination of a complaint's allegations of fact required by the aforestated principles should be one that is at once painstaking and undertaken with a generous and hospitable approach." Printing Mart, supra, 116 N.J. at 746. We apply that standard here.

To be sure, the task of discerning if the separate counts of the complaint here allege cognizable causes of action is made difficult by the numerous, vague, and overlapping allegations detailing the lengthy history underlying plaintiff's claims. The complaint lacks clarity and precision, and includes an express statement of the asserted legal claim in only one count.[5] Before the trial court, and again here, plaintiff failed to define the legal claims asserted in the various counts to permit a precise evaluation of whether the intended causes of action are sufficiently pled to state claims upon which relief may be granted.

The motion court reviewed the complaint, attempted to discern the putative legal claims asserted, and assessed whether the facts alleged were sufficient to support the eleven putative claims the court determined were asserted. Based on its determination of the causes of action asserted in each count, the court found plaintiff failed to state any claims upon which relief could be granted and dismissed the complaint in its entirety.[6]

---

[5] As discussed infra, count nine alleged a cause of action under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -20.

[6] The court's order did not state whether the dismissal of the complaint was with prejudice or whether plaintiff could amend the complaint.

The complaint's shortcomings notwithstanding, it remained the role of the courts to undertake a painstaking review of plaintiff's complicated allegations to determine whether they suggest the fundament of a cause of action. Major, supra, 224 N.J. at 26. Based on our review of the complaint, we find that some of plaintiff's counts "suggested" a cause of action, and that two of those counts should not have been dismissed.

A liberal and fair reading of the complaint reveals that plaintiff claims defendants breached various legal duties in the performance of their obligations under the 1998 settlement agreement, in connection with the servicing of plaintiff's mortgage, and in defendants' prosecution of five separate foreclosure actions. Plaintiff alleges those breaches caused him damages. It is within the context of those broad factual allegations that each of plaintiff's asserted eleven causes of action must be assessed to determine if they suggest cognizable causes of action.

A.

We first address the court's dismissal of counts one and two. The complaint does not expressly identify the purported causes of action in these counts. At oral argument before the motion court, it was conceded plaintiff was "not looking for any damages arising out of [a] breach" of the 1998 settlement agreement referenced in

each count. Plaintiff's counsel explained the counts were included to "set[] up the facts" supporting the "gravamen" of the case "based on over [twenty] years worth of frustration arising out of the foreclosure action after foreclosure action," but never identified the causes of action alleged.

The motion court read count one as a breach of contract claim based on the 1998 settlement agreement and count two as a claim for breach of the covenant of good faith and fair dealing under the agreement.[7] A liberal reading of the allegations in the counts supports the court's determination. Count one asserts that even though plaintiff made mortgage payments as required by the 1998 settlement agreement, Ocwen "failed to provide [plaintiff] any proof as to the disputed payments as . . . required in the . . . agreement." Similarly, count two asserts that "[d]espite Ocwen's breach of its agreement to provide the accounting," defendants initiated a second foreclosure action and remained in breach through the pendency of the second foreclosure action, which was dismissed in 2001.

---

[7] It appears the court read counts one and two to allege breach of contract and the covenant of good faith and fair dealing respectively because defendants' brief in support of their motion to dismiss the complaint argued those were the causes of action asserted. In his opposition to the motion, plaintiff did not dispute that the counts asserted those causes of action. On appeal, plaintiff does not identify any other alleged cause of action in the counts.

The court dismissed the claims finding that, based on the allegations in the complaint, they are barred by the six-year statute of limitations applicable to contract claims. N.J.S.A. 2A:14-1. Count one alleges that defendants breached the 1998 settlement agreement after the passage of more than a year following entry into the agreement. Count two alleged the breach was in bad faith and continued until November 20, 2002, when defendant wrongfully refused to accept plaintiff's mortgage payment. Fairly read, counts one and two allege that the last breach of the 1998 settlement agreement and covenant of good faith and fair dealing occurred on November 20, 2002. The respective causes of action therefore accrued on that date. Cty. of Morris v. Fauver, 153 N.J. 80, 109-110 (1998). Any complaint alleging a breach of the 1998 settlement agreement or covenant of good faith and fair dealing under the agreement was required to be filed by November 16, 2008.[8] Plaintiff, however, did not file his complaint until May 22, 2014.

---

[8] We need not address the court's more indulgent reading of the complaint as alleging the 1998 settlement agreement was breached as late as October 27, 2006. Under that interpretation of the allegations, defendant was required to file his claims for breach of contract and the covenant of good faith and fair dealing by October 27, 2012.

Because the facts alleged in counts one and two establish plaintiff filed his complaint well beyond the six-year limitations period, N.J.S.A. 2A:14-1, those counts were properly dismissed by the court for failing to state a claim upon which relief could be granted under Rule 4:6-2(e).[9] See CKC Condo. Ass'n, Inc. v. Summit Bank, 335 N.J. Super. 385, 387 n. 1 (App. Div. 2000) (finding that "a statute of limitations defense is sufficiently akin to failure to state a claim as to permit its disposition by way of a motion under [Rule] 4:6-2(e)" where the facts alleged in the complaint are not in dispute); Rappeport v. Flitcroft, 90 N.J. Super. 578, 580 (App. Div. 1966) (holding that where a statute of limitations bar is evident from the facts alleged in the complaint, it may be asserted as a failure to state a claim upon which relief may be granted).

---

[9] The court also read count two to assert a claim for harassment. We have treated claims alleging harassment as causes of action for the intentional infliction of emotional distress, Juzwiak v. Doe, 415 N.J. Super. 442, 455 (2010), which are subject to a two-year statute of limitations, Fraser v. Bovino, 317 N.J. Super. 23, 34 (App. Div. 1998), certif. denied, 160 N.J. 476 (1999). The last act of harassment alleged in count two occurred on November 20, 2002. Accordingly, to the extent count two alleged an intentional infliction of emotional distress claim, it was time-barred and correctly dismissed.

B.

Counts three, four, five, and eight concern defendants' filing and dismissal of earlier foreclosure actions. Count three alleges defendants filed a third foreclosure action in 2002 that was dismissed in 2005. Count four alleges defendants filed a fourth foreclosure action in 2008 that was subsequently dismissed. Count five alleges defendants filed a fifth foreclosure action in 2012 that was dismissed. Count eight alleges that defendants' filing of the five foreclosure actions constituted harassment and caused plaintiff damages.

We first address the court's dismissal of counts four and eight. The court reviewed counts four and eight and determined they insufficiently alleged a violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C.A. § 1692 to § 1692(p),[10] because they failed to allege any conduct the FDCPA prohibits. See 15 U.S.C.A. § 1692(d). On appeal, plaintiff does not challenge the court's finding that the counts do not state a claim upon which

---

[10] The court apparently determined that counts four and eight asserted claims under the FDCPA because defendants asserted in their motion to dismiss the complaint that the counts appeared to assert claims under the statute. In his opposition to defendants' motion, plaintiff did not challenge defendants' contention that counts four and eight alleged violations of the FDCPA. On appeal, plaintiff argues the court erred in finding that the counts alleged a violation of the FDCPA but does not identify a cognizable cause of action supporting the claims in those counts.

relief may be granted under the FDCPA. As a result, to the extent the counts allege a violation of the FDCPA, we affirm the court's dismissal of counts four and eight.

Based on our painstaking review of the complaint, however, we are convinced the allegations in counts four and eight also suggest other causes of action. As noted, counts four and eight, like counts three and five, concern defendants' filing of the foreclosure actions. The counts are shrouded in allegations of harassment but actually allege the foreclosure actions were improperly initiated and prosecuted. We find the allegations therefore suggest causes of action for malicious use of process and malicious abuse of process but we are nevertheless satisfied they were properly dismissed under Rule 4:6-2(e).

"The tort of malicious use of process is disfavored out of fear that its use could chill free access to the courts" and because its elements "place severe restrictions on a plaintiff's ability to recover, thus recognizing the counter-policy of free access to the courts." Baglini v. Lauletta, 338 N.J. Super. 282, 299 (App. Div.), certif. denied, 169 N.J. 607, appeal dismissed, 169 N.J. 608 (2001). To state a claim for malicious use of process, plaintiff was required to allege that: (1) defendants instituted a civil action against him; (2) the action was actuated by malice; (3) the action was brought without probable cause; (4) the action

was terminated in plaintiff's favor; and (5) plaintiff suffered "a special grievance caused by the institution of the underlying civil claims." LoBiondo v. Schwartz, 199 N.J. 62, 90 (2009).

A special grievance has been defined as consisting of "interference with one's liberty or property." Penwag Prop. Co., Inc. v. Landau, 76 N.J. 595, 598 (1978). Actions sufficient to establish a special grievance include "the appointment of a receiver, filing of a petition in bankruptcy, granting of an injunction, issuance of a writ of attachment or writ of replevin, filing of a lis pendens, issuance of an order of arrest, wrongful interference with possession or enjoyment of property, etc." Penwag Prop. Co., Inc. v. Landau, 148 N.J. Super. 493, 501 (App. Div. 1977), aff'd, 76 N.J. 595 (1978). If the "plaintiff['s] only damages consist of costs of defending the original suit, then the special grievance requirement is not met." Baglini, supra, 338 N.J. Super. at 300.

Counts three, four, five, and eight do not allege facts sufficient to state a claim upon which relief may be granted for malicious use of process. Plaintiff does not allege that any of the foreclosure actions were filed without probable cause. LoBiondo, supra, 199 N.J. at 90. That is, plaintiff does not claim the foreclosure actions were prosecuted without any basis supporting defendants' claims he was in default of his obligations

under note and mortgage. Moreover, to the extent the counts allege damages, they are limited to the cost, expense, and aggravation of defending the foreclosure actions and do not allege the special grievance required to state a claim for malicious abuse of process. Penwag, supra, 148 N.J. Super. at 502; Baglini, supra, 338 N.J. Super. at 300.

Counts three, four, five, and eight also do not state claims upon which relief may be granted for malicious abuse of process. "The gist of the tort of malicious abuse of process is not commencing an action without justification . . . it is the misuse, or 'misapplying process justified in itself for an end other than that which it was designed to accomplish. The purpose for which process is used, once it is issued, is the only thing of importance.'" Baglini, supra, 338 N.J. Super. at 293 (quoting Prosser & Keeton on Torts § 121 at 897 (5th ed. 1984)). "Basic to [a cause of action for] malicious abuse of process is the requirement that the [party] perform 'further acts' after the issuance of process 'which represent the perversion or abuse of the legitimate purposes of that process.'" Id. at 294 (quoting Penwag, supra, 148 N.J. Super. at 499). Further acts which may constitute malicious abuse of process may include "attachment, execution, garnishment, sequestration proceedings, arrest of the person and criminal prosecution and even such infrequent cases as

18                                                      A-4195-14T2

the use of a subpoena for the collection of a debt." Ibid. (quoting Prosser & Keeton on Torts, supra, § 121 at 899).

Counts three, four, five, and eight are devoid of any allegations of further acts of alleged misuse of process beyond the institution of the foreclosure actions. They do not allege facts sufficient to state claims for malicious abuse of process and were properly dismissed.

## C.

We next address the court's dismissal of counts six and ten. The court determined count six asserted a claim for intentional infliction of emotional distress and count ten alleged negligent infliction of emotional distress.[11] The court dismissed the claims, finding plaintiff failed to allege the conduct necessary to state a claim upon which relief could be granted for intentional infliction of emotional distress, and failed to allege he sustained the injuries necessary to state a claim for negligent infliction of emotional distress.

In order to prevail on a claim for intentional infliction of emotional distress as alleged in count six here, "the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." Leang

---

[11] Plaintiff does not challenge the court's determination on appeal.

v. Jersey City Bd. of Educ., 198 N.J. 557, 587 (2009) (quoting Tarr v. Ciasulli, 181 N.J. 70, 76 (2004)). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Buckley v. Trenton Sav. Fund Soc'y, 111 N.J. 355, 366 (1988) (quoting Restatement (Second) of Torts, § 46, comment d (1965)).

In addition, "the emotional distress suffered . . . must be 'so severe that no reasonable [person] could be expected to endure it.'" Ibid. (quoting Restatement, supra, § 46 comment j).  "[T]o be actionable, the claimed emotional distress must be sufficiently substantial to result in physical illness or serious psychological sequelae." Innes v. Marzano-Lesnevich, 435 N.J. Super. 198, 237 (App. Div. 2014) (quoting Aly v. Garcia, 333 N.J. Super. 195, 204 (App. Div. 2000)), aff'd in part and modified in part, 224 N.J. 584 (2016). "Complaints such as lack of sleep, aggravation, headaches and depression have been frequently deemed insufficient as a matter of law." Ibid.; see also Buckley, supra, 111 N.J. at 368 (finding evidence showing plaintiff was aggravated, embarrassed, had developed headaches, and suffered nervous tension was "insufficient as a matter of law to support a finding that the mental distress was so severe that no reasonable [person] could be expected to endure it").

A-4195-14T2

In <u>Griffin v. Tops Appliance City, Inc.</u>, 337 <u>N.J. Super.</u> 15 (App. Div. 2011), we recalled conduct that has been found sufficiently outrageous to support a claim for intentional infliction of emotional distress:

> when a landlord failed to provide central heating, running water and reasonable security in a rent controlled building in an effort to induce the tenants to vacate, <u>49 Prospect St. Tenants Ass'n v. Sheva Gardens, Inc.</u>, 227 <u>N.J. Super.</u> 449, 455-57 (App. Div. 1988); when a doctor allegedly told a child's parents that he was "suffering from a rare disease which may be cancerous knowing that the child has nothing more than a mildly infected appendix," <u>Hume v. Bayer</u>, 178 <u>N.J. Super.</u> 310, 319 (Law Div. 1981); and when an employer referred to an African American employee as a "jungle bunny," <u>Taylor v. Metzger</u>, 152 <u>N.J.</u> 490, 512 (1998).
>
> [<u>Id.</u> at 23.]

<u>Cf.</u> <u>Ingraham v. Ortho-McNeil Pharma.</u>, 422 <u>N.J. Super.</u> 12, 16-19 (App. Div. 2011) (affirming the dismissal of plaintiff's intentional infliction of emotional distress claim against her former employer, finding directions to remove her dead child's pictures from her cubicle and not talk about the child to co-workers did not rise to the level of extreme and outrageous conduct that was atrocious and utterly intolerable), <u>certif. denied</u>, 209 <u>N.J.</u> 100 (2012).

Count six alleges defendants engaged in intentional conduct by utilizing bad business practices, making demands for disputed

payments, calling plaintiff late in the evening, failing to accept plaintiff's mortgage payments, contacting plaintiff directly while knowing he was represented by counsel, and filing foreclosure actions against him.[12] It also alleges plaintiff suffered "mental anguish, damage to [his] reputation, embarrassment, [and] humiliation." The court correctly dismissed count six. By any measure, plaintiff failed to aver defendants engaged in conduct that can be properly characterized as beyond all possible bounds of decency.[13]

Count six is also deficient because plaintiff fails to allege he suffered sufficiently severe emotional distress to support an intentional infliction of emotional distress claim. Plaintiff's alleged anguish, embarrassment and humiliation are simply insufficient to support a claim for intentional infliction of emotional distress. Buckley, supra, 111 N.J. at 368; Innes, supra, 435 N.J. Super. at 237.

---

[12] We note that plaintiff does not allege the foreclosure actions were filed without probable cause that he was in default of the note and mortgage held by defendants.

[13] To the extent counts three, four, five, and eight may also be read to assert claims for intentional infliction of emotional distress, they were properly dismissed on the same basis. We are convinced the filing of the foreclosure actions, as alleged in the complaint, was not extreme or outrageous, and did not exceed all possible bounds of human decency.

A-4195-14T2

Count ten, which alleges negligent infliction of emotional distress, suffers from a similar fatal deficiency. "A claim of direct, negligent infliction of emotional distress requires a plaintiff to show that the defendant had a duty, the defendant owed the duty toward the plaintiff, and that the defendant breached that duty, proximately causing the plaintiff's injury of genuine and substantial emotional distress." Lascurain v. City of Newark, 349 N.J. Super. 251, 277 (App. Div. 2002).

The same level of emotional distress required for an intentional infliction of emotional distress claim is required to sustain a claim for negligent infliction of emotional distress. "[T]he emotional distress produced by the defendant's tortious conduct [must be] 'severe.'" Innes, supra, 435 N.J. Super. at 235 (quoting Buckley, supra, 111 N.J. at 367); see also Lascurain, supra, 349 N.J. Super. at 277 (finding that to establish requisite emotional distress plaintiff must prove it had "a dramatic impact on [plaintiff's] every-day activities or on [plaintiff's] ability to function daily"). Count ten is devoid of any averment that plaintiff suffered emotional distress and, for that reason, it was correctly dismissed by the court.

D.

The court dismissed count seven, finding it alleged defendants wrongfully initiated the foreclosure actions and, to

23

the extent it sought an accounting, did not state a claim because any dispute concerning the amount due under the mortgage could be litigated in a foreclosure action under Rule 4:64-1(d). We disagree.

Count seven alleges plaintiff made mortgage payments and paid insurance premiums over a lengthy period of time without receiving proper credit, defendants failed to pay real estate taxes funded by plaintiff's mortgage payments, and defendants charged plaintiff for insurance premiums that were improper and never credited. Moreover, plaintiff could not challenge the alleged amount due under the mortgage in a foreclosure action because, based on the averments in the complaint, defendants dismissed the foreclosure action filed in 2012. Based on our required liberal reading of allegations, we are therefore satisfied count seven sufficiently suggests a valid claim for an accounting and reverse the court's order dismissing count seven. See Onderdonk v. Presbyterian Homes of N.J., Inc., 85 N.J. 171, 181 n.4 (1981) (noting that the "three traditional grounds" supporting an order for an accounting are the "existence of a fiduciary or trust relation, complicated character of the account, or need of discovery").

E.

In count nine plaintiff alleges defendants' actions violated the CFA. The court determined plaintiff could not sustain a claim

24

under the CFA because defendants are the assignees of the note and mortgage and did not sell or advertise any merchandise or real estate, or otherwise engage in "unlawful conduct" as such terms have been defined in the CFA. We disagree.

The CFA is remedial legislation intended to apply broadly to accomplish its purpose in "root[ing] out consumer fraud." Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 121 (2014) (quoting Gonzalez v. Wilshire Credit Corp., 207 N.J. 557, 576 (2011)). "The [CFA] . . . provides a private cause of action to consumers who are victimized by fraudulent practices in the marketplace." Gonzalez, supra, 207 N.J. at 576. To state a cause of action under the CFA, a plaintiff must prove three elements: "(1) an unlawful practice, (2) an ascertainable loss, and (3) a causal relationship between the unlawful conduct and the ascertainable loss." Ibid. (quoting Lee v. Carter-Reed Co., 203 N.J. 496, 521 (2010)).

The CFA defines an "unlawful practice" as the "use or employment by any person of any unconscionable commercial practice . . . in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person . . . whether or not any person has been misled, deceived or damaged thereby." N.J.S.A. 56:8-2 (emphasis added). Actions taken in connection with "collecting or enforcing a loan,

whether by the lender or its assignee, constitutes the 'subsequent peformance' of a loan, an activity within the coverage of the CFA." Gonzalez, supra, 207 N.J. at 577-78; see also Jefferson Loan Co. v. Session, 397 N.J. Super. 520, 538 (App. Div. 2008) (finding the CFA applies to unconscionable loan collection activities by an assignee of a retail installment contract).

Count nine, which incorporates by reference the factual allegations contained in counts one through eight, alleges defendants engaged in a course of deceitful and unconscionable conduct in their efforts to enforce and collect the sums due under plaintiff's loan. The actions alleged include, but are not limited to, failing to accept and credit plaintiff's mortgage payments in order to falsely claim he was in default, and demanding payments for premiums and other purported costs that were improper. Those allegations were sufficient to state a claim even though plaintiff failed to allege facts showing improper "advertisement," that is an "attempt directly or indirectly by publication, dissemination, solicitation, indorsement or circulation or in any other way to induce directly or indirectly any person to enter or not enter into any obligation or acquire any title or interest in any merchandise or to increase the consumption thereof or to make any loan." N.J.S.A. 56:8-1(a).

We are therefore satisfied that count nine alleges sufficient facts to state a claim under the CFA that defendants engaged in unconscionable loan collection practices, Gonzalez, supra, 207 N.J. at 577-78, and reverse the court's dismissal of the claim. We are further convinced the court erred in finding plaintiff failed to state a claim against defendants because they were assignees of the note and mortgage. As noted, loan collection efforts undertaken by the "lender or its assignee" fall within the protections of the CFA. Ibid.

F.

We lastly address count eleven, which simply repeats the allegations contained in all of the preceding counts but offers no distinct cognizable cause of action. We need not weed through the thicket presented in count eleven because we have separately addressed each of its component allegations, affirmed the dismissal of some, and reversed the dismissal of others. Because we are satisfied based on our indulgent reading of count eleven that its combined allegations do not state a separate and distinct cause of action, we are convinced it was correctly dismissed by the court.

In our consideration of the court's dismissal order, we have accepted as true the complaint's factual allegations as required in any determination of a motion made under Rule 4:6-2(e). Craig

27

v. Suburban Cablevision, 140 <u>N.J.</u> 623, 625 (1995). We do not offer any opinion on the merits of any the claims and on remand defendants may assert any and all defenses.

Affirmed as to the dismissals of counts one, two, three, four, five, six, eight, ten, and eleven. Reversed as to the dismissals of counts seven and nine. Remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION