**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0200-16T2

MARYANN POSTIGLIONE,

    Plaintiff-Appellant,

v.

WILLIAM J. BARRY,

    Defendant,

and

WEST CALDWELL OFFICE ASSOCIATES,
LLC, and PHILLIPS ASSET MANAGEMENT,
COMPANY, INC.,

    Defendants-Respondents.

_____

Argued May 15, 2018 — Decided June 19, 2018

Before Judges Yannotti and DeAlmeida.

On appeal from Superior Court of New Jersey
Law Division, Essex County, Docket No. L-4500-
14.

S.M. Chris Franzblau argued the cause for
appellant (Franzblau Dratch, PC, attorneys;
S.M. Chris Franzblau and Julian Wilsey, of
counsel and on the brief; Noah Franzblau, on
the brief).

Michael C. Urciuoli argued the cause for respondent West Caldwell Office Associates, LLC (Law Office of Juengling & Urciuoli, attorneys; Michael C. Urciuoli, on the brief).

Scott D. Samansky argued the cause for respondent Phillips Asset Management Company, Inc. (Fishman McIntyre Berkeley Levine Samansky, PC, attorneys; Donald M. Garson, on the brief).

PER CURIAM

Plaintiff Maryann Postiglione appeals from orders entered by the trial court, which granted summary judgment in favor of defendants West Caldwell Office Associates, LLC (WCOA), and Phillips Asset Management Company, Inc. (Phillips). We affirm.

I.

The pertinent facts are essentially undisputed. In January 2014, plaintiff was employed by a radiologist, whose offices are located on the first floor of a commercial office building on Bloomfield Avenue in West Caldwell. WCOA is the owner of the building, and Phillips manages the property. Shortly before noon, on January 21, 2014, plaintiff arrived for work and entered the public restroom for women, which is located on the first floor of the building.

Plaintiff entered a stall and lowered her pants and underwear. Plaintiff sensed that there was another person in the restroom. She peaked under the divider to the adjacent stall and saw large

black boots "that were not characteristic of female shoes in size or style." Plaintiff stood up, looked to her right where the toilet paper dispenser was located, and noticed "a large white male hand holding a camera phone under the wall of the bathroom stall that she was using." The camera was pointed at her, and she "quickly pulled up her underwear and pants and exited the bathroom."

Plaintiff exited the restroom, went to her employer's office, and reported the incident. Two of plaintiff's coworkers immediately went and waited outside of the women's public restroom and, shortly thereafter, a man wearing large black boots exited the restroom. The coworkers confronted the man before police arrived at the scene. The man, defendant William J. Barry, was arrested and charged with criminal trespass and invasion of privacy.[1]

On June 25, 2014, plaintiff filed a complaint in the trial court against Barry, WCOA, and Phillips, asserting claims of negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, and invasion of privacy. WCOA and Phillips filed answers denying liability. Barry did not answer the complaint and default was entered against him.

---

[1] Barry is not involved in this appeal.

A-0200-16T2

In July 2015, Phillips filed a motion for summary judgment asserting that plaintiff failed to present sufficient evidence to show she suffered emotional distress injuries sufficient to meet the threshold for establishing her negligence claims. WCOA joined in Phillips's motion and also sought the dismissal of plaintiff's claims against WCOA.

On August 21, 2015, the judge entered an order denying defendants' motions for summary judgment. Thereafter, Phillips filed a motion for reconsideration, arguing again that plaintiff failed to prove injuries sufficient to establish her negligence claims.

On November 20, 2015, the judge heard oral argument on the motion. The judge reconsidered his earlier decision, and granted summary judgment in favor of Phillips. The judge memorialized his decision in an order dated November 30, 2015. On January 12, 2016, the judge filed an order granting summary judgment in favor of WCOA. This appeal followed.

## II.

On appeal, plaintiff argues that the trial court erred by granting summary judgment in favor of WCOA and Phillips. She contends the court erred by determining she had not established sufficiently severe emotional distress injuries for her negligence

A-0200-16T2

claims against defendants. She contends that the sufficiency of her emotional distress injuries is a question of fact for a jury.

Summary judgment must be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. R. 4:46-2(c). "An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Ibid.

The non-moving party may not defeat a motion for summary judgment "merely by pointing to any fact in dispute." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529 (1995) (emphasis in original). "If there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of material fact for purposes of Rule 4:46-2." Id. at 540 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).

"On appeal, we accord no special deference to a trial judge's assessment of the documentary record, and instead review the summary judgment ruling de novo as a question of law." Davidovich v. Israel Ice Skating Fed'n, 446 N.J. Super. 127, 159 (App. Div. 2016) (citations omitted). In determining whether the trial court erred by granting summary judgment, we apply the same standard

that the trial court must apply in ruling on the motion. Conley v. Guerrero, 228 N.J. 339, 346 (2017) (citing Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)).

In this case, plaintiff asserted a claim of negligent infliction of emotional distress against WCOA and Phillips. "A claim of direct, negligent infliction of emotional distress," can exist where the plaintiff claims proximately-caused damages as a result of the breach of a duty owed by the defendant. Lascurain v. City of Newark, 349 N.J. Super. 251, 277 (App. Div. 2002). In order to prevail on the claim, the plaintiff must establish "genuine and substantial emotional distress." Ibid.

"The severity of the emotional distress raises both questions of law and fact. Thus, the court decides whether as a matter of law such emotional distress can be found, and the jury decides whether it has in fact been proved." Id. at 279 (quoting Buckley v. Trenton Sav. Fund Soc., 111 N.J. 355, 367 (1988)). This court has stated that "[i]n order to be actionable, the claimed emotional distress must be sufficiently substantial to result in physical illness or serious psychological sequelae." Aly v. Garcia, 333 N.J. Super. 195, 204 (App. Div. 2000).

Our opinion in Lascurain is instructive. In that case, the plaintiff brought suit against the owner of a cemetery, where her

father was buried, asserting a claim of grave desecration and infliction of emotional distress. Id. at 275. The court noted that the plaintiff had to show, among other things, that she suffered emotional distress "so severe that no reasonable [person] could be expected to endure it." Id. at 277 (quoting Buckley, 111 N.J. at 366).

In Lascurain, the plaintiff claimed that she (1) became nauseous and hysterical when she visited the cemetery and saw the neglect; (2) later became depressed and had nightmares; and (3) no longer enjoys her activities as she used to. Id. at 280. However, the plaintiff testified at her deposition that she still played bingo, was a member of a "friendship club," and tries to keep busy. Ibid. She said she stays active, occasionally has her hair done, and at times eats out. Ibid. She conceded that she essentially does the "same sort of things" she did before she visited the cemetery. Ibid.

We held that while the plaintiff understandably suffered emotionally from the neglect of the cemetery, her distress did not rise to the level required to support a claim for emotional distress. Id. at 280. We stated that the plaintiff had not shown the sort of "dramatic impact" on her daily activities or her ability to function each day that is generally required. Ibid. We

observed that the plaintiff had not sought "regular psychiatric counseling." Ibid.

Our decision in Soliman v. Kushner Cos., Inc., 433 N.J. Super. 153 (App. Div. 2013), also is instructive. In Soliman, the defendant, the manager of a commercial office building, installed security cameras in smoke detectors that were located in the men's and women's [restrooms] in the building. Id. at 159-60. The cameras were "positioned to monitor or focus only on the 'common area' of the [restrooms], where the washbasins [were] located" as a response to reports of vandalism in the restrooms. Ibid.

Upon the discovery of these cameras, employees who worked in the building filed claims of intentional and negligent infliction of emotional distress, and invasion of privacy. Id. at 160. The defendant filed a motion for summary judgment, and one of the plaintiffs, Patricia Soliman, submitted a certification in opposition of the motion. Id. at 164.

Soliman asserted that she had met with a physician who "opined that [she] did not trust restrooms and as a consequence suffer[ed] from anxiety." Id. at 165. The physician diagnosed Soliman as suffering from "Specific Phobia to Public Restrooms," and, because she avoided using the restroom at work and avoided eating and drinking during work hours, Soliman developed distention of the bladder, hypoglycemia, and anxiety. Ibid. Soliman also had

8

"difficulty with focusing." Ibid. However, despite the physician's evaluation and diagnosis, Soliman decided not to seek psychiatric treatment and "hoped that her anxieties and fear of public bathrooms would subside after she left her employment." Ibid.

The trial court granted the defendant's motion for summary judgment and dismissed Soliman's cause of action as a matter of law. Id. at 161. We affirmed the trial court's ruling, holding that "the evidence described at length" by Soliman did "not constitute th[e] type of trauma" required to prove she had suffered sufficiently substantial emotional distress. Id. at 178.

### III.

In this case, plaintiff claims she is "suffering from severe anxiety and depression, including lack of sleep, as a result of the incident." Plaintiff met with a psychologist, Dr. Robert T. Latimer on June 5, 2014. She met Dr. Latimer once more on December 8, 2014.

In his report, Dr. Latimer detailed his meetings with plaintiff, during which she explained: "I get scared when I am alone. If I see a tall man I feel scared. I try not to let things get to me. . . . I start thinking about what happened. I have become worried of this happening again."

Plaintiff also told Dr. Latimer: "I became suspicious of something like this happening again. I felt violated and angry.

Why would it happen to me? . . . I don't feel safe anymore. I keep thinking what if he had grabbed me or raped me?" Plaintiff also detailed how the incident has made it difficult for her to sleep.

Dr. Latimer diagnosed plaintiff as suffering from "Acute Stress Disorder," with "some symptoms of [Post-Traumatic Stress Disorder]" and "some symptoms of Adjustment Disorder." The doctor also stated that "in [his] opinion, [plaintiff] is suffering from Residual Anxiety and Depression" as a result of the incident of January 21, 2014.

At plaintiff's May 18, 2015 deposition, she testified that she had not sought any further psychiatric treatment after her time with Dr. Latimer, nor did she intend to seek treatment in the future. Plaintiff has not been prescribed any medications for her alleged injuries and, although Dr. Latimer recommended that plaintiff schedule regular therapy sessions, plaintiff "decided not to do that." Plaintiff further testified that she went about her "usual routine" the day of the incident (a Tuesday), worked her normal schedule that day, and worked her normal schedule the rest of the week without missing any time from work.

As of the date of her deposition, approximately one year and five months after the January 21, 2014 incident, plaintiff had gone on two vacations, one to California and the other to Florida. The California vacation took place approximately six months after

the incident, in July 2014, and included a trip in which plaintiff camped in Yosemite National Park. The trip to Florida included a stay at plaintiff's father's house. Plaintiff also made two trips to New York after the incident, once to have dinner and once to see a baseball game. While at the game, plaintiff used the public restroom with her friend.

Plaintiff testified that she still uses public restrooms and does so on her own. When asked if she had changed her daily routine in any way as a result of the incident, other than being more cautious when she uses the bathroom, plaintiff replied "No." When asked if she has "stopped doing any activities" because of the incident, plaintiff responded "No."

Plaintiff also testified that she attends a gym, which includes a women's locker room, but the locker room is not locked. Although plaintiff claims that "anxiety is always in the back of [her] head," plaintiff still gets changed in the gym's bathroom and locker room.

Here, plaintiff's distress is understandable; however, it fails to rise to the level required for a claim of negligent infliction of emotional distress. As in Lascurain, plaintiff has not sought regular psychiatric or psychological counseling. Moreover, the incident in the restroom at her workplace did not

11

have a significant effect upon plaintiff's ability to engage in her usual activities.

In addition, the emotional distress that plaintiff suffers is less severe and less injurious than the emotional distress suffered by the unsuccessful plaintiff in Soliman. As we have explained, plaintiff worked the full day and week of the incident. She continued working at the radiologist's office in the building, and there is no evidence of any physical manifestation of plaintiff's injuries, as there was in Soliman.

Plaintiff further testified that she has anxiety when using public restrooms but has never taken medication for her anxiety. She decided not to schedule regular therapy sessions despite Dr. Latimer's recommendation that she do so. Moreover, plaintiff has not altered her daily routine or stopped participating in any life activities as a result of the incident that led to this lawsuit. Plaintiff continues to use public restrooms and uses the bathroom and locker room at her gym.

We have considered the other arguments presented by plaintiff. Those arguments lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

We conclude the trial court correctly found as a matter of law that plaintiff failed to show that her emotional distress was of the severity required to support a claim against defendants for

negligent infliction of emotional distress. The trial court correctly determined that WCOA and Phillips were entitled to judgment.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION